It is therefore adjudged and decreed that the appeal herein be dismissed.

---

(70 South. 110)

No. 20164.

LAPOUYADE et al. v. NEW ORLEANS RY. & LIGHT CO.

(Nov. 2, 1915. On Application for Rehearing, Nov. 29, 1915.)

*(Syllabus by Editorial Staff.)*

ELECTRICITY ⬤➠16 — DEATH — PROXIMATE CAUSE.

Where a boy of 17, taller than the average, was killed by an electric shock when reaching up to jerk the wire depending from an arc light to brighten it, which wire was obviously insulated through a porcelin knob, and was fastened above the reach of persons of ordinary height, indicating that the company did not wish it tampered with, the light company was not liable for the death, since the boy's act was an independent trespass contributing thereto, while the voluntary illegal conduct of plaintiff, when a proximate or concurring cause of an injury, is a bar to recovery, though, had the trespass been slighter, there would have been liability.

[Ed. Note.—For other cases, see Electricity, Cent. Dig. § 9; Dec. Dig. ⬤➠16.]

O'Niell, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Louis and Ellen Courtiade Lapouyade against the New Orleans Railway & Light Company. Judgment for plaintiffs, and defendant appeals. Judgment set aside, and suit dismissed.

Dart, Kernan & Dart, of New Orleans, for appellant. Woodville & Woodville and O. S. Livaudais, all of New Orleans, for appellees.

PROVOSTY, J. The plaintiffs sue in damages for the death of their 17 year old son, who was instantly killed by an electric shock as he had reached up one of the wooden street lamp posts of the defendant company to a height of 6 feet or more from the ground, and caught hold of the end of the wire, there fastened, by means of which the arc lamp, which hangs at the outer end of an iron cross-arm high up at the top of the post, is lowered when needing attention.

The post stood at the street corner, between the Schillinger sidewalk and the gutter, next to the gutter and out of reach of any passer-by on the sidewalk, so that the young man had to go out of his way for doing what he did. He was without right to do it, but was simply meddling with the property of the defendant company. His object was to jerk the wire, and shake the lamp, which was burning dimly, so as to make it burn more brightly. At the end of this wire is a ring which goes over a staple, and is there locked to prevent any one from tampering with the lamp. About 18 inches above this ring an insulating porcelain knob is inserted.

The insulating efficiency of this knob was tested by experts after the accident, and was found thorough and complete, although the test was made under a much higher voltage. Water was sprinkled over the knob, so as to establish the same conditions as on the night of the accident, for it had then rained. A small piece of the outer circumference of this knob was chipped off, and plaintiff's learned counsel say that this defect, together with the wetness of the knob, must have

enabled the current to jump the knob. Experts testified, however, that this chipped off condition of the knob did not impair its efficiency. Employés of the defendant company handled the wire below this knob on the night of the accident, both shortly before and shortly after, and found it not charged. Defendant suggests that the young man must have taken hold of this knob, and his fingers come in contact with the live wire above it; and this is probable, since the knob was found by the experts to be a good insulator, and the end of the wire below it was found to be uncharged both shortly before and after the accident, and since this knob was within convenient reach of the young man, who was very tall, and it afforded a much better hold for jerking the wire than did the wire below it. But the father of the young man, plaintiff in the case, testified that he saw his son's hand holding the wire below the knob. The point is not essential in the case.

The sole function of this descending wire was to serve as a rope for letting down the lamp and hauling it up again; so that ordinarily these wires are not charged. Two of the lamp tenders of the defendant company testified that in their service of years they had never known one to be charged. One of these lamp tenders said, however, that before taking hold of the wire he would always, as a precaution, test it by tapping it lightly and quickly with the back of his hand. This particular wire happened to be charged on this particular occasion as the result of the lamp being out of order. Whether the current went beyond the insulating knob is one of the questions in the case.

No negligence is sought to be imputed to the defendant company because of the lamp having been out of order; or, in other words, because of any failure duly to inspect and repair. A city ordinance requires the wires of the electric light and power system of the defendant company to be insulated, and this wire was not; and that is the negligence of which plaintiffs complain.

Defendant says that the insulation of its wires in the manner required by said ordinance would be so expensive that the doing of it is practically impossible, or, at any rate, commercially so; so that all that can be done is to insulate as far as practicable, and run the risk of whatever liability may result from failure to comply fully with the ordinance. This, however, it says merely in extenuation, not in attempted justification; for it admits its legal negligence so far as concerns the wire above the knob, and the legal consequences flowing therefrom.

Its defense is that the plaintiffs have no better right to recover than the young man would have had if he had lived; and that he would have been precluded from recovery by the fact of his own wrong having been the proximate, or, in other words, the sole legal cause of the injury.

We do not understand the learned counsel for plaintiffs as contending that the plaintiffs occupy any better position than their son would have done if he had lived; or that the son could have recovered even though his own act had been the proximate or legal cause of the accident. Their contention is that what this young man did is being done every day, or rather every night, and was supposed to be a safe thing to do; and that the young man himself had reason so to believe, since he had frequently seen others do it; among them, his own father; and that therefore his act was not imprudent, or, in other words, did not amount to contributory negligence.

We do not think the case is one exactly of contributory negligence. The young man's act was not one of negligence, but of trespass. If a man climbs one of the posts of the defendant company, and lays his bare hand upon a naked wire, and receives a fatal shock, the defense to a suit for his death will not be contributory negligence, but that

he was a trespasser, and that his own act caused his death. Stansfield v. Chesapeake Telephone Co., 123 Md. 120, 91 Atl. 149, 52 L. R. A. (N. S.) 1170. The present case is not so flagrant a one as that. The young man did not climb the post. He only went out of his way to it, and reached up to where the danger lurked; and the danger was not equally evident. But the two cases are analogous in that in both the party injured was a trespasser, and that the proximate cause of his injury was his own voluntary act. In the case supposed, of a person climbing one of the posts, the trespass would be of a more pronounced character than in the present one, and the imprudence greater; but the act in the present case was, none the less, a trespass. Not a trespass, perhaps, for which an action would lie in favor of the defendant company, but still a meddling without right with the property of another, and therefore a trespass. And it was the proximate cause of the injury, for it was the voluntary, unlawful act of a rational person operating upon an already existing condition. Schwartz v. Railroad Co., 110 La. 543, 34 South. 667.

In American Law, vol. 2, p. 124, we find the following very lucid exposition of what constitutes the proximate cause of an injury:

"When defendant's act does not immediately produce the harmful result, but when there are other factors co-operating with it, the question whether or not the defendant's act was the proximate cause is answered largely by examining the nature and character of these co-operating factors, and seeing whether in any just sense they intervened between the defendant's act and the result. If they did, they, rather than defendant's act, caused the result. If they did not, then the defendant's act is in law at least equally the cause, and he cannot escape liability." Modern American Law, vol. 2, p. 124.

The voluntary, illegal conduct of plaintiff when a proximate or concurring cause of the injury, is a bar to recovery. 38 Cyc. 529, 542.

The case is analogous with that elaborately considered by the Supreme Court of North Carolina, in McGehee v. Norfolk & Southern R. R. Co., 147 N. C. 142, 60 S. E. 912, 24 L. R. A. (N. S.) 119, where plaintiff had shot at a hole in an untenanted shanty taking it for a target, not knowing that dynamite was stored in the shanty, and had caused an explosion, by which he had been injured. The court said:

"Conceding, * * * that the defendant was guilty of negligence in storing the dynamite, * * * and eliminating all question of contributory negligence, it is manifest that, upon the facts set forth, such negligence was not the proximate cause of the damage."

The fact that in the case at bar the negligence of the defendant resulted from the nonobservance of an ordinance does not differentiate the case of the plaintiffs from the one here cited. For, even though the negligence of a defendant resulted from the violation of a statute or ordinance, a plaintiff cannot recover if his own act contributed to the injury. 29 Cyc. 438; 33 Cyc. 771; Lopez v. Sahuque, 114 La. 1004, 38 South. 810. In a case like the present the proximate cause of the injury is not the failure to observe the statute or ordinance, but is the voluntary act of the person injured in trespassing.

A different rule would have had to be applied in this case if the trespass had been so very slight as to have been purely technical; such a one as anybody might be guilty of inadvertently, or even intentionally, on the assumption that no harm could possibly result, and that the owner of the property would certainly not object. See Stansfield v. Telephone Co., cited supra. But such was not its character. The tampering with one of the arc lamps of the defendant company, or meddling with one of the wires of its electric light system, even though it be one of the wires not ordinarily bearing a current, is not a thing that a person would do inadvertently, or on the assumption that the defendant company was willing that it should be done. The very fact that the end of the wire in question is put high up, out of ordinary reach, and there fastened under lock and key, is admonition enough to all that the defendant desires that no one shall

meddle with it; and the fact that an insulator is inserted in this wire is warning enough to all that the escape of the current into it is an eventuality to be guarded against.

The judgment appealed from is therefore set aside, and the suit is dismissed, at the cost of plaintiffs in both courts.

O'NIELL, J., dissents.

### On Application for Rehearing.

LAND, J. Our statement of the law applicable to the facts of this case is in accordance with the jurisprudence of leading cases in other jurisdictions, which recently has been succinctly restated as follows:

"17. *Trespassers and Licensees Generally.*—In accordance with the principle that there is no liability for negligence where there is no duty of care, it is generally held that as to mere trespassers, licensees, or volunteers an electric company is under no obligation other than to do them no willful or wanton harm, and is not ordinarily liable to them for injuries caused by defective wires or other appliances. Nor is this rule altered by the fact that the negligence causing the injury arose from a violation of an ordinance or statute rather than from negligence at common law. As sometimes expressed a trespasser or mere licensee must take the premises of another as he finds them."

See 9 R. C. L. 1207, 1208.

In the case at bar the deceased went out of his way to meddle with an electric appliance, elevated far enough above the street to prevent contact with passers-by.

Rehearing refused.