No.——

First Circuit

---

GRAY v. ELGUTTER

---

(Dec. 7, 1926. Opinion and Decree.)
(Jan. 7, 1927. Rehearing Refused.)

---

*(Syllabus by the Editor.)*

1. Louisiana Digest—Appeal—Par. 625; Master and Servant—Par. 160 (j).

The finding of the trial court on a matter of fact, namely, that the party injured was not employed by any defendant at the time of the accident being clearly correct is affirmed.

2. Louisiana Digest—Negligence—Par. 10, 11, 36.

A skylight in an apartment house through which one may fall if he steps on the glass, is not such a trap as would make the landlord liable to a trespasser for damages.

3. Louisiana Digest—Negligence—Par. 10, 11, 36.

The owner of premises owes no duty to a trespasser save that of not wantonly injuring him.

Appeal from District Court of East Baton Rouge Parish. Hon. Wm. Carruth Jones, Judge.

Action by Lenora Gray against Adolph Elgutter et als.

There was judgment for defendants and plaintiff appealed.

Judgment affirmed.

H. K. Strickland, Fred G. Benton, of Baton Rouge, attorneys for plaintiff, appellant.

C. C. Bird, Jr., Charles Holcombe, of Baton Rouge, attorneys for defendant, appellee.

LECHE, J. Adolph Elgutter owns a two-story building situated and fronting east on Third Street in the City of Baton Rouge. The lower floor is occupied by a tenant who uses it to conduct a mercantile business known as the "Varsity Shop;" the upper floor or second story is divided into apartments known as the "Varsity Apartments," and is occupied by various and several tenants. There is a hallway running almost the full length of the upper floor, which furnishes a means

of ingress and egress for the tenants of the Varsity Apartments, so as to maintain the privacy of each occupant of the various apartments. This hallway is for the common use of all the tenants and a stairway leads thereto from the street. There are five separate and distinct apartments, numbered consecutively from one to five, each apartment consisting of three to five rooms.

In apartments three and five, situated on either side of the common hallway, and about half way or the center of the building, there are skylights which furnish daylight to the Varsity Shop below, and to the hallway above. The skylight with which we are concerned in this litigation is that situated in Apartment No. 3. It is enclosed in a shaft measuring seven feet by nine feet, which starts from the second floor of the building and extends to the roof. That part of the roof over it is of glass and so is the bottom of it, in order to permit the light of the sun above the building to penetrate to the Varsity Shop below. It is completely enclosed by a wooden partition except for a reasonable space in the wall next to the hallway, which is also glazed in order to furnish light in the hallway of the apartments. The only way to enter the skylight shaft, is by a small door which opens in a small room, called the kitchenette of Apartment No. 3. To reach the skylight room from the common hallway one must pass through two other rooms and through three or four doors.

Apartment No. 1 consists of five rooms forming the northeast or front left corner of the building; Apartment No. 2 has three rooms and is situated at the southeast corner of the building. Apartment No. 4 contains five rooms and extends across the entire rear or west end of the building, and Apartment No. 3, which contains five rooms, extends from Apartment No. 4 to Apartment No. 2 and is entirely south of the hall and on the south side of the building. There are no communicating doors between the apartments and entrance thereto can only be made from the hallway.

The floor plan of the Varsity Apartments would be more quickly understood if shown by a diagram but we believe that the description of it which we have attempted to give, is sufficiently explicit to enable one to understand all the pertinent facts necessary for a proper appreciation of the merits of this case.

The plaintiff, a colored woman, charges and complains that on October 20, 1923, while in the employ of John Ladas and J. H. Bailey, she was directed by Ladas acting for himself and Bailey, to go and clean up Apartment No. 3, to take down cobwebs, sweep and clean all the rooms of that apartment. That in compliance with these instructions, as was her duty, she proceeded to do her work, when suddenly, she went through the floor with a broom in her hand, then she "didn't know nothing until next morning". What really happened, was that she went into the skylight shaft, stepped on the glass floor, which was insufficient to carry her physical weight, went through the skylight and fell on a showcase in the Varsity Shop below. She was painfully injured but survived the shock and her testimony was elicited in extenso on the trial of the case.

In the present suit, she sues to recover damages in the sum of five thousand and sixty-two dollars against Elgutter, owner of the building, and against Ladas and Bailey, her employers, in solido.

Her demand was refused by the trial judge, and her suit dismissed. She has appealed from that decision.

Plaintiff's testimony is contradicted by the defendants in every essential particular, save the fact that she stepped on the skylight, fell through it, and was more or less injured.

Ladas at the time of this occurrence was occupying Apartment No. 4 and he was also renting Apartment No. 2, the latter only since October 10, 1923. Bailey was renting and occupying Apartment No. 1 since February 20, 1923. It appears beyond doubt that neither one of them was lessee of or had any control over Apartment No. 3 at the time. Elgutter says that Apartment No. 3 was closed and the door to the same locked by him and the key kept in his pocket, when R. H. Sellers the last tenant who occupied that apartment, left it. In this he is corroborated by Sellers himself.

It is not made clear how Apartment No. 3 became open, unless a Mrs. Malczweski who had occupied Apartment No. 4 before Ladas, and who acknowledged that she had a skeleton key with which she could open the same, had opened the door and left it unlocked. It is established beyond doubt that Apartment No. 3 had been vacant for some time before plaintiff fell through the skylight and that no one save Elgutter, owner of the building, had any right to enter it.

Plaintiff is contradicted both by Ladas and by Bailey as to the time she was employed by each one of them, for she did occasionally work as house cleaner for each of them, as to the manner of her employment and as to the wages she had earned. Both Ladas and Bailey deny in the most positive manner that either ever employed her to clean Apartment No. 3, or had ever ordered her to enter that apartment for that or any other purpose.

A mass of testimony was introduced on the trial of the case, touching facts and circumstances more or less irrelevant to the real issue, in order to impeach the credibility of the witnesses. There is no necessity to recite in this opinion, that testimony in detail. Suffice it to say that it has fallen short of its purpose so far as Ladas and Bailey are concerned. These two witnesses are corroborated by the testimony of Elgutter, by documentary evidence in the shape of a written lease and by other surrounding circumstances. Plaintiff's attempt to account for her entering Apartment No. 3 and the skylight shaft, is not only unsupported by any evidence but is in direct conflict with the testimony of Elgutter, Ladas and Bailey. Elgutter had not authorized any one to enter that apartment, he had the key to its entrance in his pocket and was under the belief that it was closed and locked, though in point of fact, the door was unlocked for having as above stated, most likely been left open by Mrs. Malczweski with the skeleton key. Ladas and Bailey were not at the time of Lenora's fall, either occupants or lessees of Apartment No. 3 and they deny having engaged plaintiff to clean or enter the same.

Under these circumstances we are constrained to hold that plaintiff acted neither as agent, employee, nor as servant of Ladas and Bailey, that she entered the skylight room to satisfy her own idle curiosity, and for no other purpose.

Plaintiff's demand against Ladas and Bailey is founded on the principle that a master must provide his servant with a safe place to perform his work. On this part of her demand, we are of the opinion that she has signally failed to bring herself within the category of a servant or employee of Ladas and Bailey. Her claim against Elgutter, on the other hand,

rests on the ground that Elgutter was at fault in keeping up on his premises, an attractive nuisance, and further admitting that she was a trespasser, that Elgutter had no right to maintain a trap as a menace to human life, even as against a trespasser.

Responsibility in damages, of those who erect or maintain instrumentalities which may injure or kill human beings, is not of universal application, but is restricted to such instrumentalities as are attractive, as are located in places which may be frequented by the public and is applied in favor of persons lacking judgment and discretion. It originated under the doctrine commonly known as the "Doctrine of the Turn-Table cases". Many courts in the country have refused to recognize it even in its most restrictive sense, holding that the owner of premises is not bound to insure trespassers. It has however been recognized in this state (Fincher vs. Chicago R. I. & P. Ry., 143 La. 164; Tomlinson vs. V. S. & P. Ry. Co., 143 La. 641), but we find no case where it has actually been applied. It is obvious nevertheless, that under the uncontested facts herein, the skylight was not an attractive nuisance in a place accessible to and frequented by the public, and that plaintiff is not a child, devoid of judgment and discretion. Her demand therefore against Elgutter upon this ground is not well founded.

Under the facts which we have found, plaintiff was clearly a trespasser when she entered Apartment No. 3, and her claim that even as to her as trespasser, Elgutter was at fault in maintaining a death trap upon his premises, equally lacks foundation.

The owner of premises owes no duty to a trespasser save that of not wantonly injuring him. Lynch vs. American Brewing Co., 127 La. 849, 54 South. 123; Morris vs. Great Southern Lumber Co., 132 La. 306, 61 South. 383; Mills vs. St. Tammany & N. O. Ry. & Ferry Co., 139 La. 286, 71 South. 511. It is not claimed or pretended that the skylight was wantonly or intentionally erected and maintained to hurt trespassers, but it is conceded that it was built for the purpose of giving light inside the building.

We do not believe that plaintiff's demand is supported by the evidence in the record or by law and so believing, it is ordered that the judgment appealed from be, and it is hereby affirmed.