LANDRY, Judge.
This is a “slip down case” in which plaintiffs, Edward D. and Maude Me C. Clement, husband and wife, sue for recovery of damages for personal injuries and medical expense sustained and incurred as the result of an accident in which Mrs. Clement, a patron in the supermarket of defendant, Alvin Bohning d/b/a Bohning & Company, received injuries to her ankle and back when she fell behind the meat counter of defendant’s establishment while supervising the cutting of ham ordered by plaintiff from defendant’s employee. The trial court rendered judgment against defendants, Alvin Bohning d/b/a Bohning & Co. and Bohn-ing’s liability insurer, Hardware Mutual Casualty Company, in solido, in favor of *496 plaintiffs, Mr. and Mrs. Clement, in the sums of $1,750.00 and $180.00, rspectively, and from said adverse adjudication, defendants have appealed.
Except as hereinafter otherwise noted, the facts of this case are relatively simple and undisputed. Defendant Bohning is the operator of an establishment currently known as a supermarket which business, consisting of a combined grocery and meat market, is conducted by defendant in a single building situated in the City of Ponchatoula. On January 30, 1960, plaintiff, Mrs. Clement, accompanied by her niece, Miss Marguerite Clement, was a customer in defendant’s establishment, having entered the store to purchase two slices or cuts of ham. Miss Clement, being more familiar with the establishment than her aunt, volunteered to purchase the desired ham and proceeded to go behind the meat counter to personally supervise not only the cutting of the ham desired by Mrs. Clement but also some beef meat which Miss Clement wished to purchase for herself. Plaintiff accompanied her niece behind the meat counter and when the desired merchandise was cut to order, the ladies started to leave with their purchases whereupon plaintiff fell and sustained the injuries which form'the basis of this lawsuit.
Plaintiffs, of course, rely upon the well recognized principle that the operators of establishments such as public stores and shops are bound to the duty of reasonable care to keep their premises safe for invitees. In this connection, plaintiffs maintain defendant was negligent in permitting ■the floor behind the meat counter to become unsafe to customers by allowing moisture and meat particles to remain on the floor thereby resulting in the floor being wet, slippery and dangerous. Additionally, plaintiffs maintain defendant was aware of the unsafe condition thus created on its premises but, notwithstandng such knowledge, failed to take protective or corrective measures to minimize the peril to its customers. Finally, plaintiffs contend defendant was negligent in failing to barricade the entrance to the area behind the meat counter to prevent customers from entering the dangerous section of the premises and failing to post adequate warning signs to alert customers to the peril involved.
In resisting plaintiffs’ demands, defendants acknowledge the general rule relied upon by plaintiffs but contend it is without application in the case at bar inasmuch as plaintiff was not an invitee because plaintiff’s injury occurred in an area reserved exclusively for the use of defendant and his employees. It is defendants’ contention the invitee rule is not apropos the case at bar because plaintiff wandered onto a portion of the premises not ordinarily and usually open to the public, without invitation express or implied, consequently plaintiff was a mere licensee to whom no duty of care is owed other than the obligation to refrain from wilfully or wantonly injuring the licensee, or setting traps for him or recklessly and wantonly exposing the licensee to danger. Defendants also maintain the area behind the meat counter was not dangerous; that certain precautions were taken by defendant to guard against slips and falls by its employees working in the meat department; that if there was any danger defendant was unaware thereof; and that plaintiff has failed to discharge the burden incumbent upon her of establishing the cause of her fall. Alternatively, defendants allege plaintiff’s contributory negligence in failing to use ordinary care and caution to avoid the danger of which plaintiff complains.
Plaintiffs, on the other hand, argue there is no merit to defendants’ position that plaintiff was in a portion or section of the store reserved for the exclusive use of defendant and his employees, because it was a common practice for customers to go behind the meat counter. Based on this premise, plaintiffs aver defendant’s duty of maintaining his premises in reasonably safe condition extended to and included the area behind the meat counter where plaintiff slipped and fell.
*497 Our jurisprudence is well settled to the effect that an owner or operator of a public establishment such as a store, shop, market or other commercial enterprise, owes to his customers, as invitees, the duty of reasonable care to protect them while on his premises. The duty of care extends to protection of the invitee against reasonably discoverable dangerous conditions in the floors, aisles, passageways and portions of the premises to which the invitee may reasonably be expected to go while on the premises in the ordinary course of events depending, of course, in each case, upon the character, nature and type of the business involved. While the storekeeper is not the insurer of the safety of his customers, nevertheless he owes the duty of maintaining the floors and passageways of his establishment in a reasonably safe condition for use in a manner consistent with the purpose of the premises and in doing so must exercise that degree of care required of an ordinarily prudent person under similar circumstances. Cannon v. Great Atlantic & Pacific Tea Company, La.App., 146 So.2d 804; Hickingbottom v. T. G. & Y. Stores of Louisiana, Inc., La.App., 147 So.2d 102.
The rule, however, does not apply to portions of the owner or operator’s premises not customarily open to the public and to which no invitation, express or implied, has been extended by the owner, operator or the employees of the owner or operator. Thus in Foshee v. Grant, 152 La. 303, 93 So. 102, the Supreme Court denied recovery to the patron of a barroom who entered the wareroom of the owner’s premises and, after being served therein, received injuries when he sat on a barrel and was burned with lye. The court therein reasoned plaintiff was not an invitee since he went onto a portion of the premises not open to the public but set aside solely for the use of defendant and his employees.
The general rule regarding liability of the owner or operator of stores, shops, markets and similar establishments is succinctly put in Am.Jur., Verbo Negligence § 100, page 761, as follows:
“§ 100. Part of premises upon Which Injury is Sustained.
An owner of occupant is liable for an injury sustained by a person, who entered the premises by invitation, as a result of a defective condition of the premises only where the part of the premises upon which the injury was sustained was covered by the invitation. If a person, although on the premises by invitation, goes to a place not covered by the invitation, the owner’s duty of care owed to such person as an invitee ceases forthwith. Thus, where one enters a part of the premises reserved for the use of the occupant and his employees, and to which there was no express or implied invitation to go, there can be no recovery for resulting injury, even though he is an invitee to other parts of the premises. This does not mean that the duty of an owner to have his premises in such condition that an invitation to visit him may be accepted without danger of personal injury from a defective condition is limited necessarily to any specific portion-of the premises; but it is limited to parts that reasonably appear to have been designed, adapted, and prepared for the accommodation of such person and to those parts to which the invitee reasonably may be expected to go, in view of the invitation given him. * * * ”
We believe resolution of the instant case rests upon determination of purely factual issues, namely: (1) whether the area behind defendant’s meat counter was a portion or section of the store open to the public imposing upon defendant the duty of keeping it reasonably safe and, if not (2) whether plaintiff went behind the meat counter at defendant’s invitation, express or implied.
While the record leaves much to be desired insofar as concerns a detailed ex *498 planation of the precise location of the meat department, the means of ingress thereto from the store proper and the physical arrangement of the meat counters and related equipment, we shall herein attempt to reconstruct the scene as we understand it from the testimony. It appears the meat market is situated at the rear of the store and is arranged somewhat in the manner usually and customarily followed in establishments of this nature. To exhibit his meat products defendant utilizes two modern, electrically refrigerated display cases which abut each other in a straight line thus forming a counter and affording an unbroken linear array of meat products. One of the display cases is described as a “self service box” in which is kept and exhibited precut and prepackaged beef and meat products with the kind, quantity and price marked on each individual package from which the customer may make his own selection without assistance from defendant’s employees. This “self service box” is shown to be twelve feet in length and four feet in height. The other display case is known as a “service box” in which is displayed larger sections of beef from which customers may purchase portions cut to their individual order. The length of the service box does not appear of record but its height is given as five feet. Aligned against the rear wall of the store, approximately four feet distant from the display cases, defendant has installed wooden blocks used in the cutting of meat, an electric meat saw and other items of equipment ordinarily used in the conduct of a meat market, the area thus left between the display boxes and said equipment being used as a work area by defendant’s employees.
The record contains conflicting testimony on the issue of whether a customer may proceed directly from the shopping area of the store to a passageway which leads to the area behind the meat counter at the time of plaintiff’s accident. In this connection, plaintiff and her niece maintain there was direct access from the shopping area to the rear of the meat counter whereas defendant’s former manager, Schaeffer, testified there was no direct passage from the open store to the work area where plaintiff fell but that, to reach the scene of the accident, a customer had “to circle around out of the shopping area to get to it.”
Although the record does not show clearly and concisely how admission to the work area of the meat market is gained, as best as we can determine from the evidence, by some circuitous route, a customer can eventually come to an approximately four foot wide passageway which leads to the work area back of the meat display cases. If we are correct in our analysis of the rather sketchy and vague testimony on this point, as the customer gains this passageway and approaches the work area he first encounters on his left the four foot high service box. To the customer’s right, against the wall separating the rear of the store and meat department from defendant’s warehouse, is situated a door providing access to the aforesaid warehouse. As the customer proceeds forward behind the self service box, he next encounters on his right a barbecue machine which device is not otherwise described in the record. Next on the right, against the rear wall of the store proper, are the meat cutting blocks adjacent to which is the aforementioned electrical meat saw, which latter apparatus is located at the approximate point where the ends of the display boxes abut, thus placing the meat saw at or about the center of the meat counters.
From the record we understand that the floor area behind the meat counters is arranged substantially in the following manner: The entire work area has been elevated by construction of a concrete platform which raises the floor level a matter of a few inches commencing at approximately the end of the self service box and running along the entire length of both display boxes. It appears that one must make a short step upward from the floor level of the store to the level of this platform. *499 As one proceeds forward behind the self service box toward the meat saw, one encounters a sloping wooden ramp or incline leading to a wood platform which further raises the floor level in the vicinity of the meat saw.
It is undisputed that plaintiff and her niece proceeded behind the self service box to the sloping wooden ramp, ascended the ramp to the wooden platform where they stood while defendant’s employee used the saw to fill their special orders and plaintiff fell as she was descending the sloping wooden ramp to leave the work area of the meat market and continue shopping in the grocery department. It is further conceded the entrance to the work area at the end of the self service box was not barricaded in any manner to prevent customers going behind the meat counters and neither were there any signs warning customers their presence behind the meat counter was prohibited.
We believe the instant case falls squarely within the rule of Foshee v. Grant, 152 La. 303, 93 So. 102, which holds the applicable invitee rule does not extend to those portions of the owner or operator’s premises not customarily open to the public and to which no invitation, express or implied, has been tendered by the owner or operator.
It is clear from the record plaintiff was not injured in an aisle or other open and public portion of defendant’s store to which customers may reasonably be expected to go in the ordinary course of shopping in such an establishment, nor was it an area customarily open to the public in such establishments. It is further evident plaintiff was injured in a work area reserved solely and exclusively for the use of the employees in defendant’s meat department. The area was specially arranged, equipped and furnished so that it might adequately and efficiently serve for the intended purpose of a meat market. .The floor behind the meat counters was elevated to accommodate the employees and the wooden ramp and platform constructed near the meat saw was designed and intended to permit the easy use of carts which we gather were used to bring meat to the display cases and to the meat blocks for cutting. It is further shown the area behind the meat counters was washed down nightly in compliance with health department regulations. In addition, the work area was covered daily with wood shavings or sawdust to prevent slips and falls by defendant’s employees. The record further reveals that none of defendant’s employees have ever slipped or fallen in the area in question. The evidence clearly establishes the area was safe for those exercising ordinary and reasonable care with due regard for the attending circumstances; that it did not constitute a trap; and that one injured in its use cannot be said to have been wil-fully or wantonly injured by defendant.
Manifestly it cannot be said defendant’s invitation to customers to use the premises extended to the aforesaid work area reserved exclusively for use by defendant and defendant’s employees. Consequently, unless plaintiff can show implied invitation, plaintiff must be regarded as a mere licensee to whom defendant is not liable under the circumstances shown.
Plaintiff’s niece, Miss Clement, testified she frequently patronized defendant’s store and customarily went behind the meat counter whenever she desired to order a special cut of meat. She stated she supervised the cutting of steaks and other choice cuts to insure the desired thickness of such items. While Miss Clement conceded she did not always go behind the counter for every meat purchase, she invariably did so when she elected to make a special purchase. Mrs. Clement, plaintiff, frankly conceded that, whereas, she had visited defendant’s store on numerous occasions, the date of the accident was the first time she had gone behind the meat counter. She acknowledged she merely followed her niece as the former proceeded back of the counter.
*500 Defendant’s employees concede that on occasion some customers do go behind the counter to make meat purchases and, whereas it is against store policy to permit customers behind the counter, the presence of a customer in the work area confronts the employees with a dilemma because to forbid entry or request a customer to leave the area is likely to be resented thereby incurring a loss of the customer’s good will and patronage. As a general rule, therefore, nothing is said to a customer who comes behind the counter although on occasions customers have been asked not to come behind the counter or to leave if they have entered the work area.
In the case at bar, defendant admits plaintiff was not asked to leave the work area whereas plaintiff acknowledges she received no express invitation from defendant’s employees to come behind the counter. Considering the circumstances shown, we attach little significance to defendant’s failure to erect a barrier at the head of the passageway leading behind the counter or post signs advising customers the area in question was not open to patrons of the store. In the ordinary course of events, plaintiff, a mature adult, should have known, realized and understood from the physical arrangement of the store, she was expected to refrain from going behind the meat counter in the absence of either an express invitation from defendant’s employees or the existence of circumstances known to her whereby she might reasonably deduce she was impliedly welcome in the area where the employees performed their duties.
While it might be logically argued a storekeeper may be held to have impliedly extended the applicable invitation to an area reserved for the exclusive use of the owner or operator and his employees, by regularly, customarily, and continuously permitting the use of such an area by customers or patrons, no such regular, customary or continued practice is established in the case at bar. As previously noted, it was not the general practice of defendant’s customers to go behind the meat counter and certainly it was not plaintiff’s custom to do so.
Plaintiff, having failed to establish her presence in the work area was by defendant’s invitation, express or implied, has failed to establish her case.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiffs, Edward D. Clement and Maude Me C. Clement, and against defendants, Alvin Bbhning d/b/a Bohning & Co., and Hardware Mutual Casualty Company, in solido, in the sums of $180.00 and $1,750.00, respectively, be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of said defendants dismissing and rejecting said plaintiffs’ causes at plaintiffs’ cost.
Reversed and rendered.