316 So.2d 907 (1975)
Ross CATES, Individually, etc., Plaintiff and Appellant,
v.
BEAUREGARD ELECTRIC COOPERATIVE, INC., et al., Defendants and Appellees.
No. 5061.
Court of Appeal of Louisiana, Third Circuit.
July 30, 1975.
Rehearing Denied August 28, 1975.
*909 John J. Cummings, III, New Orleans, for plaintiff and appellant.
Jones, Kimball, Patin, Harper, Tete & Wetherill by Carl H. Hanchey, Lake Charles, Aycock, Home, Caldwell, Coleman & Duncan by L. E. Hawsey, III, Franklin, John Henry LeBleu, Lake Charles, for defendants and appellees.
Before HOOD, CULPEPPER and WATSON, JJ.
CULPEPPER, Judge.
This suit was originally filed by Ross Cates, individually and on behalf of his minor son, Larry G. Cates, seeking damages for personal injuries sustained by Larry when he came in contact with an energized electric wire on a utility pole owned by the defendant, Beauregard Electric Cooperative, Inc., and situated on the property of the defendant, Cecil Ribbeck. After suit was filed on September 19, 1973, Larry G. Cates became 18 years of age on February 2, 1974, and he was named a party plaintiff. The district judge granted motions for summary judgment in favor of both the electric company and the landowner. Plaintiffs appealed.
*910 The decisive issue is whether defendants are entitled to summary judgment on the grounds that Larry G. Cates was contributorily negligent.
The facts, as shown by the pleadings, depositions, affidavits and other documents, which may be considered for purposes of the summary judgment, are as follows: The defendant, Cecil Ribbeck, owns approximately 70 acres of piney woods land in a rural area near Moss Bluff, Louisiana. The property is bound on the west by a blacktop highway, Perkins Ferry Road, and on the north by Joe Miller Road. There are barbed wire fences along the roads, but none on the other boundaries. On the land is an old farm house, which has been abandoned for 15 or 20 years. The property is uninhabited and unused. It is grown up in bushes, briars and trees.
When the old farm house was in use, the defendant, Beauregard Electric Cooperative, Inc., had erected an uninsulated 7620 volt feeder line from Perkins Ferry Road a distance of about 800 feet to the house. The line was supported by four wooden poles about 28 feet in height, the last pole being near the house. A transformer was attached to the pole near the house at an elevation of about 22 feet. Two insulated copper wires for 110 volt service ran from this transformer to the house.
When the farm house was abandoned in about 1957, the service wires from the transformer to the house were cut, and they hung down from the pole to an elevation of about 10 feet from the ground. The stinger line from the transformer up to the 7620 volt line on top of the pole was disconnected by opening a hot line clamp. The 7620 volt primary line on the top of the pole remained energized. This was the condition of the electrical equipment on September 30, 1972, the time of the accident with which we are involved in this case.
On the date of the accident, the plaintiff, Larry Cates, who was then 16 years of age, and his brother, Ronald B. Cates, 9 years of age, and his friend, Kent Guy, 16 years of age, were riding horses in the area, as they had done many times before. They entered Ribbeck's property through an unfenced portion of the boundary. Their purpose was to pick up some copper wire which they had seen lying on the ground on a previous visit. The shop teacher at their high school had asked the class to bring in copper wire for sale for the benefit of The Future Farmers of America.
The boys first rode to the area where they had previously seen the copper wire lying on the ground, but it was gone. They then went to the old farm house and decided to try to remove the two insulated copper wires hanging down from the transformer. Once before, Kent Guy had tried to shinny up this pole to get these copper wires but he was unable to climb the pole.
Larry Cates decided to climb the pole and get the wire. The deposition of his brother, Ronald Cates, describes what happened as follows:
"Well, once before Kent had tried to climb up a pole and get the copper wire but he couldn't so we were just riding along and they decided they wanted to go over and so then they looked up there and saw that copper wire. So Larry started over there towards the pole and stood up on the saddle and climbed up. And he stuck his left foot on the transformer and his right foot on the bottom ring and he wenthe held around the pole with his right arm, and he reached in his pocket to get the pliers to cut the copper, and he started slipping and he reached up there and grabbed it."
Kent Guy stated in his deposition that after Larry shinnied up the pole and got on the transformer, he heard something cracking and popping and heard Ronnie *911 scream, and then he looked to the top of the pole. Kent describes what he saw as follows:
"Q. What was happening on the pole?
"A. He had his left hand on the wire and the sparks were flying.
"Q. Which wire are you talking about now that he had his hand on?
"A. The wire that goes from pole to pole.
"Q. It would be the wire closest to the top of the pole?
"A. Yes."
As a result of burns received in the accident, Larry Cates lost his left arm at the shoulder, his right arm near the wrist and his left leg. He is scarred over most of his body and he is paralyzed, from the 5th thoracic vertebra down.
Plaintiffs' principal contention is that summary judgment is inappropriate because there are genuine issues as to material facts within the meaning of LSA-C. C.P. Article 966. In their brief, plaintiffs list these issues of fact as follows:
"(1) Status of Larry Cates with reference to the power company;
"(2) Status of Larry Cates with reference to the landowner;
"(3) Negligence of Cecil Ribbeck;
"(4) Negligence of Beauregard Electric Cooperative, Inc.;
"(5) Proximate cause of injury;
"(6) Negligence of Larry Cates;
"(7) Applicability of the doctrine of `attractive nuisance;' and
"(8) Wanton negligence of either defendants."
We will discuss these alleged genuine issues of material facts in the order in which they are listed above.

STATUS AS TO POWER COMPANY
The first alleged issue is the status of Larry Cates with reference to the Power Company. Plaintiffs say there is a fact issue as to whether Larry was a trespasser, a licensee or an invitee, and that this issue is material because the duty of the Power Company toward Larry varies according to his status.
The plaintiff, Mr. Ross Cates, filed in the record his affidavit stating that the property owned by Cecil Ribbeck was used as a "recreational area" by numbers of people who engaged in such activities as picnicking, hunting, fishing, swimming, blackberry picking, horseback riding, hiking and even motorcycle racing. Mr. Cates states in his affidavit that he could produce 50 witnesses who actually used the property for these purposes prior to the date of the accident in 1972. Plaintiffs contend that this affidavit, together with the depositions of Kent Guy and Ronald Cates that they had been on the property many times for the purpose of horseback riding and hunting, are sufficient to show that this was a "recreational area" frequented by children and other people and that there was an implied invitation or at least implied permission by the owner for such use.
Even if the affidavits and depositions are sufficient to raise an issue of fact as to whether young Cates entered the premises as an invitee or a licensee, there is no question that he exceeded the scope of any such implied invitation or permission and became a trespasser, when he began to climb the service pole for the purpose of taking copper wire which he knew was the property of another. The law is that an invitee or licensee loses this status when he goes outside the portion of the premises covered by the invitation or permission, Comment, Land Occupiers Liability to Trespassers, 18 La.L.Rev. 716 (1957); Prosser, Law of Torts, Section 61, at pages 391-92, 4th Ed. (1971); Restatement, 2d, Torts, Section 341, Comments *912 (a)-(c) (1965). In Louisiana this principle has been applied to deny recovery by a tavern patron who entered a wareroom in the rear of defendant's saloon and sat down on a barrel covered with lye, Foshee v. Grant, 152 La. 308, 93 So. 102 (1922); by a super market customer who slipped and fell behind a meat counter, Clement v. Bohning, 159 So.2d 495 (La.App., 4th Cir. 1964); and by a maid who fell through a sky light in an apartment she was not supposed to clean, Gray v. Elgutter, 5 La.App. 315 (1st Cir. 1926).
In the early case of Lapouyade v. New Orleans Railway & Light Company, 138 La. 237, 70 So. 110 (1915), plaintiff's 17 year old boy was killed by an electric shock when he reached more than six feet up defendant's wooden lamp post on the public street and jerked a wire hanging down from an arc light, his intent being to brighten the light. The court denied recovery on the grounds that the boy was a trespasser, even though he did not climb the pole, as in the present case. The court held:
"We do not think the case is one exactly of contributory negligence. The young man's act was not one of negligence, but of trespass. If a man climbs one of the posts of the defendant company, and lays his bare hand upon a naked wire, and receives a fatal shock, the defense to a suit for his death will not be contributory negligence, but that he was a trespasser, and that his own act caused his death. Stansfield v. Chesapeake Telephone Co., 123 Md. 120, 91 A. 149, 52 L.R.A.(N.S.) 1170. The present case is not so flagrant a one as that. The young man did not climb the post. He only went out of his way to it, and reached up to where the danger lurked; and the danger was not equally evident. But the two cases are analogous in that in both the party injured was a trespasser, and that the proximate cause of his injury was his own voluntary act. In the case supposed, of a person climbing one of the posts, the trespass would be of a more pronounced character than in the present one, and the imprudence greater; but the act in the present case was, none the less, a trespass. Not a trespass, perhaps, for which an action would lie in favor of the defendant company, but still a meddling without right with the property of another, and therefore a trespass. And it was the proximate cause of the injury, for it was the voluntary, unlawful act of a rational person operating upon an already existing condition."
When the hypothetical case suggested by the court in Lapouyade finally arose more than a half century later, the court reached the result suggested, and held that a 14 year old boy who entered an electric sub station, climbed a tower and came into contact with an energized wire was a trespasser, Tooraen v. New Orleans Public Service, Inc., 243 So.2d 312 (La.App., 4th Cir. 1971).
The courts of other jurisdictions have also concluded that persons who have a right to be on the ground near an electric utility pole become trespassers when they exceed the scope of their invitation or permission by climbing the pole. See Ryckeley v. Georgia Power Company, 122 Ga. App. 107, 176 S.E.2d 493 (1970) (tower on right of way used by children); Crosby v. Savannah Electric & Power Company, 114 Ga.App. 193, 150 S.E.2d 563 (1966) (a pole near vacant lot where children played); Moseley v. Kansas, 170 Kan. 585, 228 P.2d 699 (1951) (pole on city street corner); Urban v. Central Massachusetts Electric Company, 301 Mass. 519, 17 N.E.2d 718 (1938) (pole on playground); Texas Power & Light Company v. Burt, 104 S.W.2d 941 (Texas Civ.App.1937) (tower in public park); Miller v. Suburban Power Company, 41 Ohio App. 70, 179 N.E. 202 (1930) (pole on deceased child's playground); Brown v. American Manufacturing Company, 209 App.Div. 621, 205 N.Y.S. 331 (1924) (tower in yard of tenement houses). The rationale of these decisions is *913 concisely stated in Crosby v. Savannah Electric & Power Company, supra, where the court sustained a demurrer by defendant:
"A trespasser is one who, though peaceably, wrongfully enters upon the property of another. In the context here it is one who wrongfully goes upon or climbs the pole of the defendant; or, to state it differently, one who, without authority or permission from the owner, does so. Permission or consent to climb the pole can not be implied, even if the owner may have knowledge that it was customary for children to play in the area where it was located. (citation omitted) Nor would it matter that the children may have been licensees as to the ground where they played, for extension of permission (express or implied) by the owner of the ground to play upon it could not include an extension of permission by the owner of the pole to climb it. . . It could not be assumed that a permission to play upon the land area in the vicinity of the pole would extend to the climbing of the pole to highly dangerous wires some twenty feet above, even if the land and the pole were under common ownership, and much less so when it appears, as here, that the land and the pole were under separate ownership."
Applying these rules of law to the present case, it is clear that even assuming young Cates enjoyed the status of an invitee or a licensee when he entered upon the Ribbeck premises, he lost this status and became a trespasser when he shinnied up the electric utility pole, for the purpose of taking copper wire which he knew belonged to another.
STATUS AS TO LANDOWNER
The next alleged issue of fact is the status of Larry Cates with reference to the landowner. For the reasons stated above, even assuming Larry was an invitee or a licensee when he entered the premises, there is no question that he became a trespasser when he climbed the pole. Therefore, this is not a genuine issue of material fact.
NEGLIGENCE OF CECIL RIBBECK
The next alleged issue of material fact is the negligence of Cecil Ribbeck. Even assuming for purposes of the motion for summary judgment that the landowner, Cecil Ribbeck, was negligent in allowing this unused but energized electric line to remain on his property, or even assuming that he was negligent in any other respect, this issue is not material because we ultimately decide that young Cates, as a matter of law, was guilty of contributory negligence barring plaintiffs' recovery.
NEGLIGENCE OF THE POWER COMPANY
The next alleged issue of fact is the negligence of Beauregard Electric Cooperative, Inc. This defendant has admitted negligence for the purpose of the summary judgment. Its negligence is therefore not a material issue.
PROXIMATE CAUSE OF INJURY
The next alleged issue of fact is the proximate cause of the injury. Assuming, as we have done, for the limited purpose of the summary judgment, that both the Power Company and the landowner were negligent, in leaving this unused 7620 volt line energized from the public road to the pole at the house, after electric service to the house had been discontinued, then there is no question that this negligence was a legal cause of the accident. Larry Cates received the electric shock when he grabbed the 7620 volt line. Hence, this causation issue is not material for the purpose of our consideration of the summary judgment.
*914 CONTRIBUTORY NEGLIGENCE OF LARRY CATES
The next alleged issue of fact is the contributory negligence of Larry Cates. This presents the most serious question for our consideration. In the recent case of Campbell v. American Home Assurance Company, 260 La. 1047, 258 So.2d 81 (1972) our Supreme Court defined contributory negligence generally as follows:
"Contributory negligence is conduct on the part of a plaintiff in a negligence action that falls below the standard to which a reasonable man should conform for his own protection."
At the time of the accident, Larry Cates was 16 years and 8 months of age. He was in the ninth grade of high school, made average grades and was of normal intelligence. There is no question that under the jurisprudence of Louisiana a youth of this age and intelligence is capable of contributory negligence. Children as young as nine or ten years of age have been held capable of contributory negligence, Young v. Grant, 290 So.2d 706 (La. App., 1st Cir. 1974).
In deciding whether a 16-year old youth is guilty of contributory negligence, the same rules are applicable as in the case of ordinary negligence, i.e., consideration is given to the youth's age, background, intelligence and all of the surrounding circumstances of the particular case, Butler v. City of Bogalusa, 258 So.2d 599 (La.App. 1st Cir. 1972), writ denied, 261 La. 544, 260 So.2d 323.
In the present case it is not necessary for us to consider the fine line of distinction between contributory negligence and assumption of the risk, as the courts have done in some cases. See the recent case of Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), where the court stated that generally a determination of whether a plaintiff has assumed a risk is made by subjective inquiry, whereas contributory negligence is determined objectively under the reasonable man standard. Here, regardless of whether young Cates actually knew or appreciated the danger, there is no question that he did not comply with the reasonable man standard as established in Louisiana jurisprudence for persons who come in contact with electric utility lines. The Louisiana courts have repeatedly held that, in the absence of unusual circumstances, a person who voluntarily places himself in contact with an obvious uninsulated electric line is guilty of contributory negligence, Hebert v. Coca Cola Bottling Company, 272 So.2d 737 (La.App., 3rd Cir. 1973); Bordelon v. Continental Casualty Company, 229 So.2d 761 (La.App., 3rd Cir. 1969); Thomas v. Gulf States Utilities Company, 128 So.2d 323 (La.App., 1st Cir. 1963); Coulon v. City of Alexandria, 44 So.2d 171 (La.App., 2d Cir. 1950); Nesmith v. Central Louisiana Electric Company, 257 So.2d 744 (La. App., 3rd Cir. 1972).
There are cases where the person who came in contact with the energized wire was excused from contributory negligence, where the importance and utility of that which he was seeking to accomplish was weighed against the probability of injury to himself, this being one of the broad standards for determining whether he acted as a reasonable man. For instance, in Whitworth v. Shreveport Belt Railroad Company, 112 La. 363, 36 So. 414 (1904) the injured person was excused where he came in contact with a wire while attempting to rescue another; and in several cases workmen have been excused where they were required to work in close proximity to energized lines, Shreveport v. Southwestern Gas & Electric Company, 145 La. 680, 82 So. 785 (1919); Harper v. New Orleans Public Service, Inc., 300 So.2d 546 (La.App., 4th Cir. 1974); Boure v. New Orleans Service, Inc., 255 So.2d 776 (La. App., 4th Cir. 1972). The foreman of a crew working on the electric company's substation was excused where previously *915 the work which he had been directed to perform was on de-energized equipment, and he was justified in believing that the work which he was doing was "cold", Cooksey v. Central Louisiana Electric Company, 279 So.2d 242 (La.App., 3rd Cir. 1973).
In the present case, there were no such exculpating circumstances as those involved in the cases cited above. Here, young Cates was not seeking as an invitee or a licensee to perform some useful purpose, the importance of which can be weighed against the probability of anticipated harm to himself. For the reasons stated in detail above, Cates was a trespasser, who climbed a utility pole for the purpose of taking copper wire which was the property of another. This case falls squarely within the rulings in Lapouyade v. New Orleans Railway & Light Company, supra; Tooraen v. New Orleans Public Service, Inc., supra; and the many cases cited above from other jurisdictions holding that where a person climbs a utility pole with no authority, permission or invitation whatever, he is a trespasser. We find no Louisiana case involving a person who was injured while attempting to appropriate wire from a utility pole. But in Steele v. Lynches River Electric Cooperative, Inc., 259 S.C. 239, 191 S.E.2d 253 (1972), the court, in granting a motion for directed verdict, held as follows in a situation almost exactly like that involved in the present case:
"Respondent was nineteen years of age, married, and had completed the tenth grade. The evidence, viewed in the light most favorable to him, simply shows that he was injured while attempting to cut a short section from electric wires which had been left hanging from a transformer located on one of appellant's transmission poles. There is no testimony that the wires posed any danger to one merely passing by. Respondent came in contact with them only after climbing and standing on top of a nearby barbed wire fence. In doing so, he was attempting to take the wire, which belonged to appellant, for his own use.
"Respondent was an intelligent person and was charged with knowledge that contact with a wire charged with electric current is attended with danger. Under the circumstances, the fact that respondent may not have known the electric wires were actually charged with current does not relieve him of the responsibility for intentionally coming in contact with the wire. The wire which he intentionally caught was hanging from an electric transmission line. This fact was open and apparent, and gave warning of the likelihood that the wires were charged with current. In spite of this fact, respondent stood on top of the fence and caught hold of the wire. His purposeful action in so doing constituted contributory negligence, as a matter of law, and barred him of recovery." (emphasis supplied)
Plaintiffs argue there are circumstances which raise a factual issue as to whether Larry Cates was guilty of contributory negligence, and therefore this issue should be tried on the merits by a jury. Plaintiffs point to the fact that Larry Cates stated in his deposition he had no knowledge that the line was energized. They point to the statements of Larry Cates and Kent Guy that six weeks before the accident they had found some copper wire laying on the ground in the area and had actually touched the wire and moved it from the path of their horses. However, the boys state that on the date of the accident when they went back to pick up this particular copper wire that was on the ground, it was gone. Whether such a copper wire was ever actually on the ground or not, this was not a circumstance on which Larry Cates had a right to rely in assuming, if he did so, that the 7620 volt line on the top of the poles was not energized.
Plaintiffs also rely on the circumstance that Kent Guy says he believed that *916 the lines were de-energized. Guy stated in his deposition that about six weeks prior to the accident, on the occasion when he tried to shinny up the pole but could not do so, he held in his hands the two insulated copper wires which hung down from the transformer, and they were de-energized. Guy stated that on the date of the accident he again held the two insulated lines and they were de-energized. We conclude as a matter of law that the fact that the two insulated copper wires hanging down from the transformer were de-energized, and that Kent Guy and Larry Cates knew this, would not give these youths the right to assume that the 7620 volt primary line above the transformer on top of the poles was also de-energized. The mere existence of an uninsulated electric transmission line on top of these poles constituted adequate notice to Larry Cates, a trespasser, that the line might be energized, Nesmith v. Central Louisiana Electric Company, 257 So.2d 744 (La.App., 3rd Cir. 1972).
ATTRACTIVE NUISANCE
The next alleged issue of material fact is the applicability of the doctrine of attractive nuisance. This doctrine applies only to children of tender years, who are too young to appreciate the danger, Butler v. City of Bogalusa, 258 So.2d 599 (La. App., 1st Cir. 1972). It does not apply to a normal youth 16 years of age, Tooraen v. New Orleans Public Service, Inc., 243 So. 2d 312 (La.App., 4th Cir. 1971). Therefore, there is not an issue of fact or law as to the applicability of the doctrine of attractive nuisance. As a matter of law, the doctrine cannot be applicable here.
WANTON NEGLIGENCE OF EITHER DEFENDANT
The last alleged issue of material fact is whether either defendant was guilty of wanton negligence. Of course, even though young Cates was a trespasser, the defendant power company and the defendant landowner owed him the negative duty not to willfully or wantonly injure him, Gotreaux v. Travelers Insurance Company, 299 So.2d 466 (La.App., 3rd Cir. 1974); Wannage v. Marcantel, 176 So.2d 5 (La.App., 3rd Cir. 1965); Prosser, Law of Torts, Section 64, at page 436 (3d Ed. 1964). The terms "willful", "wanton", and "reckless" have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow. See Prosser, Law of Torts, Section 34, at pages 187-189 (3d Ed. 1964). See also Sullivan v. Hartford Accident & Indemnity Company, 155 So.2d 432 (La.App., 2d Cir. 1963); Lipscomb v. New Star World Publishing Corporation, 5 So.2d 41 (La.App., 1st Cir. 1941); Jefferson v. King, 12 La.App. 249, 124 So. 589 (2d Cir. 1929).
As to licensees, the only duty owed by the occupier of the premises is to warn him of any latent, non-apparent dangers or defects which are actually known to the occupier, Gotreaux v. Travelers Insurance Company, 299 So.2d 466 (3rd Cir. 1974); Cothern v. LaRocca, 255 La. 673, 232 So.2d 473 (1970). However, no such duty is owed to the treaspasser to warn him of latent, non-apparent dangers or defects in the premises that are known to the occupier. See the cases cited above in our discussion of the status of young Cates as *917 to the power company. Lapouyade v. New Orleans Railway & Light Company, supra and Tooraen v. New Orleans Public Service, Inc., supra, are specific authority for the proposition that there is no duty to warn trespassers of the obvious danger of climbing electric utility poles and coming in contact with uninsulated wires.
Under the undisputed facts of the present case, the strongest argument which could be made that either the power company or the landowner were guilty of wanton negligence is that they knew this electric line on top of the poles was energized and failed to remedy the hazard or to give warning of its presence. Of course, this hazard was not a latent, non-apparent danger, as to which the defendants owed even a licensee the duty of warning. It necessarily follows that there was no duty to warn trespassers of the danger.
Plaintiffs argue that the hazard here was sufficient to constitute a trap. There is authority for the proposition that the occupier of premises cannot deliberately set out traps or spring guns for trespassers who might come on the premises. See the Comment, Land Occupiers Liability to Trespassers, 18 La.L.Rev. 716. It cannot be argued that the hazard in the present case was a trap. This energized wire was 28 feet above the ground and could be reached only by those with the great physical agility and strength necessary to shinny up the pole. And, as stated above, it was not a latent, non-apparent hazard. It was an obvious danger which any reasonable person should have seen and avoided.
IS SUMMARY JUDGMENT APPROPRIATE?
Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. Article 966. Comment (a) under Article 966 states that the summary judgment procedure was adopted for "its potential for expeditious disposition of frivolous, but well pleaded, demands and defenses."
Of course, we are aware of the jurisprudence under Article 966 et seq. which holds that summary judgments should not be used as a substitute for trial on the merits, and that in case of doubt the motion for summary judgment should be denied, Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963) and its progeny.
We are also aware of the general rule that in negligence actions where the question is whether the conduct meets the reasonable man standard, the courts have usually denied motions for summary judgment. See Wright & Miller, Fed. Practice & Procedure, Civil, Section 2729 (Fed. Rule 56).
Whether the reasonable man test presents an issue of fact or an issue of law has been the subject of much discussion in the jurisprudence and by legal scholars. The test for determining whether reasonableness is an issue of fact or an issue of law is that if men of reasonable minds could differ as to the conclusion to be drawn, it is an issue of fact, but if reasonable minds could not differ, then it is a question of law. See Prosser, Law of Torts, 2d Ed., Sec. 36 at pages 208-209.
For the reasons discussed in detail above, we have concluded there is no genuine issue of material fact as to the occurrence of the accident itself. Larry Cates shinnied more than twenty feet up a bare electric utility pole, a feat which required great physical agility. He was a normal intelligent youth, 16 years and 8 months of age. He was charged with knowledge that contact with the electric line on top of the pole could be dangerous. The hazard was open and apparent. When Larry climbed *918 the pole, he was a trespasser, whose conduct had no useful purpose. Under these undisputed facts as to the occurrence of the accident, it is our view that reasonable minds could not differ from a finding that Larry Cates fell below the standard to which a reasonable man must conform for his own protection, and that he was therefore, as a matter of law, guilty of contributory negligence.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiffs appellants.
Affirmed.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge (dissenting):
I cannot agree with the majority opinion which affirms a summary judgment in favor of defendants on the basis of contributory negligence.
Contributory Negligence
First, I do not agree that the question of contributory negligence can be properly decided on a motion for summary judgment.
". . . existence vel non of contributory negligence is a question of fact, and. . . the arbiter of such fact is judge or jury." Odom v. Hooper, 273 So.2d 510 at 514, 515 (La., 1973).
Odom v. Hooper is particularly apropos since it involves a summary judgment granted on a finding that plaintiff was guilty of contributory negligence as a matter of law. The Court of Appeal affirmed the summary judgment and the Supreme Court reversed, stating:
"Only a trial on the merits will reveal the true facts of an accident; in other words, plaintiff and defendant must have their day in court." 273 So.2d 515
On the question of whether "reasonableness" is a question of law or fact, Odom v. Hooper bluntly says:
"The reasonableness and prudence of the deceased is a factual matter and must be tried on the merits of this case." 273 So.2d 515
The majority opinion paraphrases Dean Prosser to the effect that the test of reasonableness, as a question of fact or law, is whether reasonable minds could differ in the conclusion to be drawn. (Does this beg the question?) I note that Dean Prosser was speaking of proof of negligence, not contributory negligence and that he adds, later in his treatise, the following:
"The result of all this is that, while the theory is the same, and the formula put to the jury is the same, the practical application of both is not the same for negligence and for contributory negligence. As to the latter, in part because of these differentiating factors, and in part, perhaps, because of the healthy dislike and distaste which nearly all courts have developed for this defense, the marked tendency has been to let the issue go to the jury whenever it is at all possible."[1]
Therefore, I conclude that the general rule in Louisiana, as announced by the Supreme Court in 1973, is that contributory negligence and "reasonableness" are factual questions to be decided by trial on the merits.
Also, the case before us concerns not a reasonable man, but a reasonable 16-year-old boy who, I submit, might be much more likely to climb a tree or an abandoned pole to collect scrapwire for his school. While a 16-year-old boy may be contributorily negligent, he is not held to the same ". . . degree of prescience, caution and intelligence of an adult," Shally v. N. O. Public Service, Etc., Board, 1 La.App. 770 at 777, affirmed, 159 La. 519, 105 So. 606.
*919 Status of the Boy
Second, the issue of the boy's status as to: (a) the electric company; and (b) the landowner, involves questions of both fact and law.
The majority opinion cites Tooraen v. New Orleans Public Service, Inc., 243 So. 2d 312 (La.App. 4 Cir. 1971) which held that a 14-year-old boy who climbed a seven-foot chain link fence with three strands of barbed wire at the top, embellished with signs reading "Danger High Voltage", and who then climbed a structure inside the fence some 20 feet high was contributorily negligent and could not take advantage of the attractive nuisance doctrine. The instant case, where a youth climbed what may have appeared to him to be an abandoned electric pole, with only one wire still strung and two or three wires dangling down the pole, adjacent to an abandoned farmhouse, presents a considerably different situation factually from Tooraen.
It is significant that Tooraen, on which the majority relies heavily, was not a summary judgment case, but was a review of a case tried on the merits.
The other case on which the majority relies is the 1915 decision of Lapouyade v. New Orleans Railway & Light Company, 138 La. 237, 70 So. 110, which involved not an abandoned pole but a pole on a public street. I note that Justice O'Niell dissented in Lapouyade and I suggest the case does not represent current legal thought.
I think there is a serious question as to whether young Cates was a trespasser as the majority concludes.
I am not certain that the majority considers the difference in status that the boy had as to the power company and the landowner. Can the power company claim he was a trespasser as to an abandoned pole located on someone else's property? Does the trespasser theory under the cases cited by the majority relate to abandoned poles and wires still charged with high voltage? Cf. Langazo v. San Joaquin Light & Power Corporation, 32 Cal.App.2d 678, 90 P.2d 825 (1939).
In summary, I think it is far from clear that defendants are entitled to summary judgment. Any doubt as to summary judgment is to be resolved in favor of trial on the merits. Moreaux v. American Mutual Insurance Co., 302 So.2d 686 (La.App. 3 Cir. 1974); Vidrine v. White, 306 So.2d 465 (La.App. 3 Cir. 1975); writ granted, La., 309 So.2d 679. The plaintiff may have only a slim chance on the merits, but this Court must not overlook the fact that we are not deciding (or even reviewing) the merits. Summary judgment is not to substitute for trial.
I respectfully suggest that the majority makes a serious mistake in approving a summary judgment in not just a negligence case, but in a contributory negligence case.
For these reasons, I dissent.
NOTES
[1] Prosser, Law of Torts, 4th Ed., § 65, p. 420.