VIRGINIA J. DRISCOLL *vs.* ANTHONY PAGANO
(and four companion cases[1]).

Middlesex.    March 1, 1943. — March 31, 1943.

Present: FIELD, C.J., LUMMUS, QUA, COX, & RONAN, JJ.

*Negligence,* Gross, Motor vehicle, Use of way.

A finding of gross negligence of the operator of an automobile was not warranted by evidence that the automobile, proceeding at about forty miles an hour on a wet street without being slowed upon requests by other occupants, became caught in a street car rail, skidded and went off the road out of the operator's control.

FIVE ACTIONS OF TORT. Writs in the First District Court of Eastern Middlesex dated, two of them, July 30, 1940; one November 29, 1940; one February 10, 1941; and one June 12, 1941.

Upon removal to the Superior Court, the actions were tried together before *Beaudreau,* J.

*H. R. Donaghue,* for the plaintiffs Virginia M. Anderson and another.

*M. T. Silverstein,* for the plaintiffs Driscoll and another.

*A. R. Sisson,* for the plaintiff Abagis.

*J. W. Vaughan,* for the defendant.

Cox, J. This is a report by a judge of the Superior Court, after the jury had returned verdicts for the plaintiffs, of his action in entering verdicts on leave reserved (G. L. [Ter.

———

[1] The companion cases are by Helen A. Ralph, George Abagis, Virginia M. Anderson, p.p.a., and John Anderson against the same defendant.

Ed.] c. 231, § 120) for the defendant in five actions of tort brought to recover damages alleged to have been sustained as the result of the gross negligence of the defendant. Three of the plaintiffs, hereinafter referred to as the plaintiffs, sustained injuries while they were "guest occupants" of the defendant's automobile on Broadway in Malden on June 15, 1940, at about 8 : 25 P.M. when it was "light," "just twilight." The other plaintiffs seek to recover consequential damages.

Broadway, which is a straight road, lies partly in Everett and partly in Malden. It is about forty-five feet wide and in Everett has a smooth black top, while in Malden it is a cobblestone street covered with cement. There are no car rails on the Everett side, but beginning at the Malden line there are two sets of rails which are "slightly above" the surface of the street. There is a "down-hill" grade which flattens out before the city line is reached, and, somewhere on the hill, there is a sign which reads, "Slippery When Wet." The automobile in question was a 1937 model, and the only evidence as to its condition was that it was in good mechanical order, that the steering mechanism was all right, and that the brakes were working all right.

The group in the automobile was on the way, evidently from Everett, to a dance hall, the location of which does not appear, where the price of admission doubled after 8 : 30 P.M. There was a delay in starting, and one of the plaintiffs testified that this delay upset their plans to get to the dance hall before the "price rise." The defendant, who was operating the automobile, proceeded along Broadway in Everett at a speed variously estimated as about forty or forty to forty-five miles an hour. About a quarter of a mile from the scene of the accident, the male plaintiff noticed that the automobile was going so fast that they were passing other automobiles (there was no evidence of the speed of other automobiles), and that there was "decided body swaying and wobbling" of their automobile. He then told the defendant to slow down, that there was no hurry and no use in trying to beat the "price rise." The defendant replied that he was driving the automobile, knew what he was doing, and that everything was all right. At the same time, the witness

noticed for the first time that the defendant was not wearing his glasses (his license to operate required that he should), and he said to the defendant: "You cannot see so good without your glasses on, take it easy." The defendant replied: "All right, I can drive it all right." One of the female plaintiffs said nothing to the defendant about the speed, but the other, who was seated in front, said, evidently at the same time that the male plaintiff spoke to the defendant, that they "were going very fast"; the male plaintiff said "not to go so fast because the price had already gone up at the" dance hall, and the defendant replied that he was driving and could take care of the automobile. The speed was not reduced thereafter.

The rain that had been falling had stopped, but the roads were wet, and the defendant, who was familiar with the road, knew that it was a "pretty slippery surface to drive a car on in wet weather." One witness, who was riding in an automobile that the defendant had passed, evidently at the top of the hill, testified that the accident took place on the level; that the automobile straddled the inside rail of the car tracks and that "suddenly almost like a flash" it "shot" to its right; that it was apparent that the wheels of the automobile got caught in the tracks and that was what threw it to the right; and that the rails were hard to get out of when wet and very dangerous. A companion of this witness testified that he saw the automobile suddenly "shoot" off to the right; that it went to the dirt sidewalk, where there was no curbing, and back to the rails; that it did not go ahead on the road, but went "sideways and every other way, apparently in a bad skid, that the driver couldn't bring it out of, that the wheel had caught in the rail, that he could see that." The automobile stopped against a billboard, a part of which was broken by the impact, and which was variously stated by one of the witnesses to be about seventy-five or one hundred fifty yards from the city line. This witness also testified that the automobile went off the road about seventy-five yards after it passed the city line, and also that it was about one hundred fifty yards from where it went off the road to the billboard. One of the

plaintiffs testified that at the city line the automobile started to go from side to side and then went off the road to the right, and that the accident happened "as quick as a flash." Another plaintiff testified that a few seconds after they passed the "cobblestones" where the car tracks began, the automobile swung to the right, then to the left, and went off the road to the right. The third plaintiff testified that after the automobile got on Broadway in Malden, it skidded on the car tracks, then went off the right side of the road, bounced around quite a bit, turned over, and then stopped at the billboard; that the right back of the automobile bounced into the billboard; that the skidding was caused by the front wheels getting caught in the car tracks, and that she knew that was what made the automobile go off the road. There was evidence that after the automobile turned over it righted itself, and that the right front tire was flat. The evidence was undisputed that, after the automobile came to a stop, the defendant was sitting behind the wheel with one plaintiff on his right and the other two in the same places in the rear seat where they had been sitting before the automobile skidded.

The only evidence as to the condition of the automobile, apart from the flat tire, was that it was spattered with mud. One of the plaintiffs testified that the defendant, as he was driving, had both hands on the steering wheel and was looking straight ahead. Another plaintiff testified that at the time of the accident the defendant's head was "turned" straight forward, that he was not paying any attention to the other passengers, but was facing straight ahead. There was no contradictory evidence on this point. Moreover, one of these plaintiffs testified that when he signed a statement in which he said that the defendant was going twenty-five miles an hour he did not say that that was not correct, "he wanted to explain that the defendant was watching the road."

The defendant testified that he did not think he could drive as well without glasses, although he denied that he was not wearing them at the time of the accident. As bearing upon his ability to see, he was asked to pick out various ob-

jects in the Middlesex County court room. He could tell the time from the witness stand across the entire width of the court room, could see that the pendulum in the clock was swinging, could read the words on a calendar and tell the metal and the color of the metal that was on the top of it across the width of the court room. He admitted that he was "out of sorts in the first place" and that all of them were. Two of the plaintiffs testified that the third plaintiff, who was sitting in front (who testified that she would take one of the plaintiff's statements for the fact that she was turned in her seat talking), after they left her home, was turned in the seat and was talking with them all the way up to the time the accident happened. The defendant testified that he knew he was in the tracks because of a "slippery feeling," and that when he "went to get off the tracks . . . the wheel was wrenched out of his hands and he made a grab but out of control it went," and the automobile skidded to the right.

At best, it is often exceedingly difficult to draw the line of distinction that exists between gross and ordinary negligence. Yet the distinction is well established and must be observed, lest all negligence be gradually absorbed into the classification of gross negligence. *Duval* v. *Duval*, 307 Mass. 524, 528. Each case must be decided according to its peculiar features, although a fact finding tribunal is not required to pass separately upon the various elements that enter into a defendant's conduct. On the contrary, that conduct is to be considered as a whole, and in each case it becomes a question of determining whether a finding is warranted of that high degree of culpability and indifference to duty that is the essential characteristic of gross negligence. *Duval* v. *Duval*, 307 Mass. 524, 528, and cases cited. Ordinarily no one element of conduct can be ruled to constitute gross negligence. Every act or omission entering into a particular happening must be considered in connection with all the other circumstances before the whole can properly be held to be an instance of gross negligence. *Picarello* v. *Rodakis*, 299 Mass. 33, 35. Where, however, the conduct of a person is alleged to have been grossly negli-

gent, an examination of its several elements is not out of place.

The speed at which the defendant was operating, in the circumstances disclosed, cannot be said to constitute gross negligence. It is true that the road was wet, but apart from the evidence that the body of the automobile was swaying and that there was a "wobbling," there is nothing to indicate that up to the time the defendant reached the car tracks he did not at all times have the automobile under control. The same may be said as to the evidence of the cautions that were given at about a quarter of a mile from the scene of the accident. From the narration of these cautions in the record, it does not appear that they quite amounted to remonstrances, and, as bearing upon the matter, it is of significance that the plaintiff who was seated in front was turned in her seat and talking with the other plaintiffs all the way up to the time the accident happened. The male plaintiff was not looking ahead when he gave his caution. We refer to several cases in each of which it was held that a finding of gross negligence was not warranted. *McKenna* v. *Smith*, 275 Mass. 149 (wet and slippery road, speed forty miles an hour, automobile going from side to side and twisting and swerving as it went around the curves; place particularly dangerous, view obstructed; caution as to speed). *Richards* v. *Donohue*, 285 Mass. 19 (speed fifty to fifty-five miles an hour, passing automobile on curve, oil surface; disregard of all requests to moderate speed and not to pass another automobile on curve; sharp turn to right to avoid oncoming automobile, loss of control of automobile which turned around twice and turned over twice). *Adamian* v. *Messerlian*, 292 Mass. 275 (speed forty-five to fifty miles an hour descending particularly slippery and icy hill at night; protests as to speed; automobile began to skid, defendant lost control and it continued to skid several hundred feet). *Lynch* v. *Springfield Safe Deposit & Trust Co.* 294 Mass. 170 (speed fifty miles an hour at night). *Souza* v. *Mello*, 304 Mass. 552 (speed sixty miles an hour at 6 P.M. in October; collision with truck standing on the side of the road). *DeSimone* v. *Pedonti*, 308 Mass. 373 (speed

about forty-five miles an hour in the evening, defendant urged to slow down or they "would get killed"; defendant angry and cursing; dirt surfaced road, "kind of rough"; automobile skidded when it "did not take" a sharp curve).

It is true that it might have been found that in violation of a restriction in his license to operate, the defendant was not wearing glasses at the time of the accident. See *Holland* v. *Boston*, 213 Mass. 560; *Cahalane* v. *Dennery*, 298 Mass. 34. The demonstration of his ability to see things in the court room, however, can hardly be ignored. Although he testified that he did not think he could drive as well without glasses, it does not appear that his failure to have them on was the cause of what happened. There was no evidence that there was any traffic ahead of him as he was proceeding after he crossed the city line. Although the tracks were "slightly above the paved surface of the road," the extent of their elevation beyond this does not appear. It cannot be said, in the circumstances, that he should not have driven upon the car tracks, although, as things turned out, it would have been better if he had not. See *Stowe* v. *Mason*, 289 Mass. 577, 580, 581.

There is no evidence in the case of any deliberate inattention that is one of the common indicia of gross negligence, see *Lynch* v. *Springfield Safe Deposit & Trust Co.* 294 Mass. 170, 172, or of a heedless and palpable violation of legal duty respecting the rights of others. See *Altman* v. *Aronson*, 231 Mass. 588, 591. Moreover, the uncontradicted evidence of two of the plaintiffs is to the effect that the defendant had both hands on the steering wheel, was looking straight ahead, and watching the road, and the third plaintiff, who did not remember whether the defendant was looking straight ahead, testified that he had both hands on the wheel.

It seems apparent from the record that the automobile skidded badly, and it could have been found that the defendant attempted to get off the tracks. This may have been bad judgment in the circumstances. The automobile "shot" to its right. The accident happened "quick as a flash." The automobile started "to sway and immedi-

ately swerved up over the sidewalk." There was evidence that the automobile went a considerable distance (see *Adamian* v. *Messerlian*, 292 Mass. 275) after it first left the car tracks. But there is no evidence that the defendant could have done anything to prevent this. We are of opinion that the evidence as to what the defendant did or did not do up to the time he reached the car tracks does not warrant a finding of gross negligence, and that what happened thereafter, together with what went on before, does not. In other words, putting all the factors together, while the case is close, a majority of the court is of opinion that there was no error on the part of the trial judge.

The case is distinguishable from *Connors* v. *Boland*, 282 Mass. 518, *Channon* v. *Lynch*, 292 Mass. 316, *Lefeave* v. *Ascher*, 292 Mass. 336, *Campbell* v. *Costin*, 293 Mass. 225, *Smith* v. *Axtman*, 296 Mass. 512, *Goodwin* v. *Walton*, 298 Mass. 451, *Picarello* v. *Rodakis*, 299 Mass. 33, *Dombrowski* v. *Gedman*, 299 Mass. 87, *O'Neill* v. *McDonald*, 301 Mass. 256, and *Lyons* v. *Todina*, 306 Mass. 592.

In each case the entry may be

*Judgment for the defendant.*