**Gerald S. SLAUGHTER, et al., Plaintiffs–Appellants,**

v.

**SOUTHERN TALC CO., et al., Defendants–Appellees.**

No. 89–7031.

United States Court of Appeals, Fifth Circuit.

Dec. 14, 1990.

Mike Davis, Daniel W. Andrews, Byrd, Davis & Eisenberg, Austin, Tex., for plaintiffs-appellants.

J. Frank Kinsel, Jr., Cantey & Hanger, Fort Worth, Tex., for Southern Talc.

Elizabeth Thompson, Donald J. Verplancken, Butler & Binion, Houston, Tex., for the Celotex Co.

Frank Bean, Rick W. Thamm, Houston, Tex., for Eagle–Pitcher Industries, Inc.

John A. Stephens, Fulbright, Winniford, Bice & Marable, Waco, Tex., for John Crane (Houdaille, Inc.).

Vic Fields, Floyd T. Getz, Ramey, Flock, Jeffus, Crawford, Harper & Collins, Tyler, Tex., for A.W. Chesterton Co.

Kevin J. Keith, Bailey & Williams, Dallas, Tex., for Owens–Corning Fiberglass Corp.

Kevin J. Cook, Gary D. Elliston, DeHay & Blanchard, Dallas, Tex., for Armstrong World Industries, Flexitallic Gasket Co., Keene Corp. and GAF Corp.

Thomas L. Kelly, Jr., Patterson, Lamberty, Kelly & Stanford, Dallas, Tex., for Anchor Packing Co.

Karl Van Gardner, Edward J. Hennessy, Hennessy & Zito, Houston, Tex., for Garlock, Inc.

Before GOLDBERG, KING, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

In this asbestos injury suit, the appellants challenge the district court's grant of partial summary judgment, arguing that the court improperly assessed the credibility of their expert witnesses. Finding that

the district court acted within its authority in evaluating the reliability of this evidence, we affirm.

### Facts and District Court Proceedings

The 451 plaintiffs in this action are members of the National Rubber Workers Union. Through the efforts of the National Tire Workers Litigation Project, these workers participated in diagnostic screenings to detect the presence of asbestos-related disease. These screenings, conducted in mobile units, consisted of X-rays and workplace questionnaires completed by the workers. The screenings did not include physical examinations.

After two years of discovery, the appellees filed a motion for partial summary judgment accompanied by 310 pages of X-ray examination reports and the affidavit of the appellees' pulmonary specialist, Dr. Bradley. Bradley's affidavit stated his conclusion that based upon his review of the X-rays and reports attached as exhibits, 421 plaintiffs showed no signs of pulmonary disease. In reply, the appellants submitted the affidavits of their pulmonary specialists, Drs. Gelbard and Rao. Although these affidavits referenced the X-rays, questionnaires, and examination reports as exhibits, these items were never submitted as summary judgment evidence.

At the hearing on the summary judgment motion, the appellees identified several inconsistencies between the examination reports and the conclusions later reached by the appellant's experts.[1] Disturbed by the district judge's comments at the end of the hearing, the appellants submitted additional affidavits from other experts. The court refused to consider this proffer, characterizing those affidavits as "uninvited and untimely." The trial court granted the appellees' motion for summary judgment, which was later certified as a final judgment. This appeal followed.

### The Requirements of Rule 703

■ The appellants argue that in granting the summary judgment motion, the district court improperly judged the credibility of their expert witnesses, a function typically within the purview of the jury.[2] Because the diagnostic methods employed by the appellants' experts are widely accepted in the medical community, the appellants argue that the jury should have been permitted to hear and evaluate the evidence. We are unpersuaded.

As a general rule, questions regarding the scientific bases of an expert's opinion "affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir.1987). *See also, Dixon v. International Harvester Co.*, 754 F.2d 573, 580 (5th Cir.1985). However, this general rule yields when "the source upon which an expert's opinion relies is of such little weight ... that [the] testimony would not actually assist the jury in arriving at an intelligent and sound verdict." *Viterbo*, 826 F.2d at 422. In such cases, this court has held that Federal Rule of Evidence 703 requires courts to examine the reliability of an expert's sources to determine whether they satisfy the threshold established by

---

**1.** The appellees noted that the workplace questionnaires completed by the workers were often inconsistent with the information contained in the experts' examination report. For example, an illustrative questionnaire contained the following responses:

| | Yes | No | Years |
|---|---|---|---|
| Have you worked close to lined "hot pipes"? | | X | |
| Have you worked with or close to: | | | |
|   Soapstone? | | X | |
|   Talcum powder? | | X | |
|   Asbestos? | | X | |

In spite of this information, Dr. Gelbard states in her examination report:

"He worked ... with asbestos, soapstone, talc, and close to hot pipes ... During that period he noted exposures to thermal insulation and other asbestos-containing products."

**2.** As the appellant properly argues, a district court may not base a decision to admit expert testimony upon its assessment of the credibility of the expert. *Honore v. Douglas*, 833 F.2d 565, 567 (5th Cir.1987). Instead, once a witness is accepted as an expert, "the jury [is] at liberty to accept or reject his testimony, and to judge his credibility." *Dixon*, 754 F.2d at 580.

the rule.[3] See *Soden v. Freightliner Corp.*, 714 F.2d 498, 502 (5th Cir.1983). Reviewing the district court's assessment of reliability for manifest error, *Washington v. Armstrong World Industries, Inc.*, 839 F.2d 1121, 1123 (5th Cir.1988), we conclude that partial summary judgment was proper.

■ The "sources" of the experts' opinions were the examination reports previously compiled. As the appellees demonstrated at the summary judgment hearing, a sampling of these reports revealed that they were replete with "so many obvious errors as to be of no value to the trier of fact." Additionally, although the affidavit referenced the reports as exhibits, they were never submitted as summary judgment evidence.[4] Considering these inadequacies, the Gelbard and Rao affidavits represented nothing more than bare conclusions derived from erroneous data. As this court noted in *Viterbo*, "[w]ithout more than credentials and a subjective opinion, an expert's opinion that 'it is so' is not admissible." *Viterbo*, 826 F.2d at 424. The district court properly granted partial summary judgment.[5]

### The Post–Hearing Affidavits

The appellants contend that the district court erred in refusing to accept additional supporting affidavits filed after the summary judgment hearing. We disagree.

■ Under Federal Rule of Civil Procedure 6(b), the trial court has broad discretion to accept late-filed affidavits "where the failure to act was the result of excusable neglect." Absent an affirmative showing of excusable neglect, a trial court does not abuse its discretion in refusing an untimely proffer. *Bernhardt v. Richardson–Merrell, Inc.*, 892 F.2d 440, 444 (5th Cir. 1990); *Farina v. Mission Invest. Trust*, 615 F.2d 1068 (5th Cir.1980).

■ The appellants have made no such showing of excusable neglect. The record reflects that the late-filed affidavits were prepared long before the summary judgment motion was filed. The appellants made a tactical decision to withhold them because they were fatal to the claims of many of the plaintiffs. We find this tactical decision inequivalent to the "excusable neglect" demonstrated by the plaintiff in *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140 (5th Cir.) *cert. denied*, 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (1973), a case relied upon by the appellants. In that case, the non-moving party was unable to submit timely affidavits because discovery was incomplete. The district court granted summary judgment, but our court reversed, ruling that the plaintiff had demonstrated

---

**3.** Federal Rule of Evidence 703 establishes the parameters for expert testimony. Under the rule, an expert may base his opinion on facts or data perceived by him or others, including otherwise inadmissible facts, if those facts are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject...." See, *Soden*, 714 F.2d at 502. The approach we employ today mirrors the concerns regarding expert testimony expressed by this court in *In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233–34 (5th Cir.1986). As the court noted, "it is time to take hold of expert testimony in federal trials."

**4.** We reject the appellant's argument, based upon *Bulthuis v. Rexall Corp.*, 789 F.2d 1315 (9th Cir.1985), that Rule 705 does not require that an expert's affidavit contain the factual support for the opinion expressed in it. In *Bulthuis,* the Ninth Circuit clearly distinguished the affidavits at issue from those comprised of "bare conclusion[s]." *Id.* at 1318, quoting *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir.1980).

See also, *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985) (where the court concluded that "Rules 703 and 705 do not alter the requirement ... that an affidavit must set forth specific facts in order to have any probative value.") Although we are in no way bound by these decisions, we find our result is consistent with them.

**5.** We distinguish this case from *Christophersen v. Allied–Signal Corp.*, 902 F.2d 362 (5th Cir.), *reh. granted en banc,* 914 F.2d 66 (1990), in which this court reversed the district court and held that the basis for the expert's opinion satisfied the requirements of Rule 703. In *Christophersen,* the court confronted the narrow issue of the reliability of negative epidemiological studies, a frequent source for expert opinion regarding causation. In our case, data derived from *medically accepted* diagnostic techniques were sloppily compiled. Thus, although the diagnostic methods used are not questioned, the errors in the reports render the basis of the resulting opinions suspect.

"excusable neglect." The appellants in this case were not only *capable* of producing the affidavits in a timely fashion, but had them available at the time the motion was filed. Although we appreciate counsel's efforts to act in the best interests of all plaintiffs, we cannot consider their decision "excusable neglect." The district court acted within its discretion in refusing to accept these untimely affidavits.

### Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.