**ORTHOPEDIC & SPORTS INJURY CLINIC, et al., Plaintiffs–Appellants,**

v.

**WANG LABORATORIES, INC., Defendant–Appellee.**

**Nos. 90–4278, 90–4341.**

United States Court of Appeals, Fifth Circuit.

Jan. 8, 1991.

---

Edward K. Alexander, Jr. and Robert W. Fenet, Woodley, Williams, Fenet, Palmer & Norman, Lake Charles, La., for plaintiffs-appellants.

James K. Irvin, Lynn Farley Ives and Randall K. Labauve, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for defendant-appellee.

Before RUBIN, SMITH, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Orthopedic & Sports Injury Clinic (the Clinic) bought a computer from Wang Laboratories, Inc. (Wang), and contracted with Wang to maintain and perform repairs on it. While attempting to fix the computer, Wang's employees requested and used the Clinic's last back-up disk and, in the course of their attempted repairs, lost five years of medical and accounting data stored on the disk.

The Clinic, its member physicians, and their medical corporations sued Wang in state court for negligence, recklessness, gross negligence, and damages in excess of $1 million. Wang removed the case to federal court on the basis of diversity. Wang moved for and received a partial summary judgment from the district court, which limited the Clinic's claims to only those damages allowed by the parties' maintenance agreement and dismissed the individual doctors and the professional medical corporations.

The Clinic successfully requested certification under Fed.R.Civ.P. 54(b) and 28 U.S.C. § 1292(b) and filed a notice of appeal. The Clinic also filed a first supplemental and amended complaint alleging three new claims under the Louisiana Unfair Trade Practices and Consumer Protection Act (UTPA), the Louisiana law of red-

hibition, and the federal antitrust laws. It later filed a second supplemental and amended complaint. Wang again successfully moved for summary judgment.

The Clinic now pursues its interlocutory appeal. It contends that (1) summary judgment was inappropriate on its claim of gross negligence; (2) the court erred in not applying the doctrine of *res ipsa loquitur;* (3) summary judgment was inappropriate on its claims of unfair or deceptive trade practices; (4) summary judgment was inappropriate on its claim for redhibition; and (5) the court erred in ruling that the individual doctors and their corporations lacked adequate standing to sue Wang. Finding no error, we affirm.

## I.

The Clinic bought a computer from Wang in 1984 and contracted for Wang to maintain and perform repairs on it. The Clinic also purchased a software program from Cycare, Inc. (Cycare), to keep track of the medical records and accounts and likewise contracted with Cycare to maintain the software.

The Clinic began having problems with the computer (code errors appearing when turning on the machine) in July 1987, and Paul Wardell, a Wang service technician, began working on the problem that month. Wardell replaced the EPROM (eraseable programmable read-only memory)[1] board on the computer, and that seemed to solve the problem. Replacing the part required the disks to be reformatted. To do this, the removable disk has to be placed into the disk drive and reformatted, which erases the data currently on it, and then the data on the hard disk has to be backed up to the removable disk. The hard disk is then reformatted, and the data is transferred from the removable disk back to the hard disk.

Before working on the computer, Wardell instructed two employees of the Clinic to back up the data on the computer. Prior to the new board's installation on July 23, Gloria Doyle, a Clinic employee, ran a back-up to the data and created a back-up set no.

2. To verify that the information was copied, Wardell and a Clinic employee ran a verification procedure. The Clinic also had an extra set of back-up referred to as back-up set no. 1. Wardell returned on July 24 to fix a loose cable, as the computer would not operate. After installation of the new board, the computer appeared to be working.

On August 4, the problem, code errors (called "I91 errors"), surfaced again. Wardell thought the disk alignment might be the problem. He began testing the alignment and found it to be within an acceptable range, but there were still I91 errors. On August 6, two other Wang representatives joined Wardell at the Clinic. On that day, Doyle performed a back-up on set no. 1. The machine was disassembled and put back together, and Wardell returned the following Monday after the additional Wang employees had not been able to fix the problem on Friday. A back-up was attempted on set no. 2, but it was unsuccessful, and all data on back-up set no. 2 was erased. The Clinic still had set no. 1.

On August 11, Wang representatives returned to the Clinic and replaced the magnet, velocity transducer, and voice squall assembly and completed the realignment. The information on the back-up disk needed to be transferred back onto the hard disk so that the new alignments would coincide with the back-up disk; without such realignment the data would be inaccessible. When this was attempted, the first disk of set no. 1 did not copy onto the hard drive. This is significant, as all three disks of each back-up set are essential (disk no. 1 contained codes to read the information on other disks.).

The parties dispute why disk no. 1 would not copy. The Clinic contends that the Wang employees were responsible for the data loss. Doyle claims that she overheard Wardell say that he should not have placed the magnet on that disk; however, she was not in the same room and did not see on what disk the magnet was placed. Wardell admits he made the statement. Nevertheless he contends the disk he put the mag-

1. EPROMS are computer chips which contain basic operating instructions for the computer's disk drive.

net on was not disk no. 1, but was one of his service disks. Moreover, Wang averred that the damage to the disk is inconsistent with damage that would have occurred from placing a magnet on it.

The Clinic presents an affidavit from its expert, Thomas White, and alleges that Wang was grossly negligent in using the last back-up copy while attempting repairs to the machine and in failing to make a sufficient number of copies, to test and verify the computer before back-ups were performed, and to print the data before attempting to reformat or copy the last data. Wang filed affidavits and deposition excerpts refuting all of the above.

## II.

As we have noted, the appeal is before this court on interlocutory certification.[2] The only issue remaining in the district court is the Clinic's action against Wang for damages as limited by the contract; that matter is being held in abeyance pending resolution of the instant appeal.

We apply the same summary judgment test as does the district court. *Ayo v. Johns–Manville Sales Corp.*, 771 F.2d 902, 904 (5th Cir.1985). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986). The substantive law identifies those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ As the magistrate recognized, summary judgment turns on whether a proper jury question is presented, and the judge is generally not to weigh the evidence or make credibility choices. *Id.* at 249, 106 S.Ct. at 2510–11 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1071 (5th Cir.1987). If the moving party carries its burden under Fed.R.Civ.P. 56(c), the opposing party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III.

■ The Clinic maintains that the district court incorrectly granted Wang's first summary judgment motion on the gross negligence issue.[3] It contends that the court was wrong in accepting the magis-

---

**2.** Wang notes that appealability as to the individual doctors and their corporations' claims is uncertain. The certification order for this appeal certifies the order of December 13, 1988 (amended on January 13, 1989), relating to gross negligence, and the November 15, 1989, order on redhibition and unfair and deceptive trade practices, but it adds that the December 13, 1988, and January 13, 1989, orders are made final and appealable under rule 54(b). The January 13 amended order made the dismissal of the doctors and their corporations final so that it could be appealed. Thus, the district court certified the appealability of an order it had already made appealable in fact had been appealed, but the appeal was voluntarily dismissed. Making matters even more complicated, the Clinic deleted the individual losses in the second amended complaint. The notice of appeal includes the Clinic, doctors, and their corporations. Given our decision to affirm the

summary judgment, we find it unnecessary to resolve this procedural issue.

**3.** The district court held "that reasonable minds could not differ as to whether Wang's personnel's conduct was grossly negligent. Clearly gross negligence has not been exhibited by the defendant's personnel."

Indeed, "gross negligence" and "ordinary negligence" are significantly different in degree. *Driscoll v. Pagano*, 313 Mass. 464, 48 N.E.2d 11, 13 (1943). Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence. *Altman v. Aronson*, 231 Mass. 588, 121 N.E. 505, 506 (1919). Gross negligence is more than just simple inadvertence. "It amounts to indifference to present legal duty and to utter forgetfulness of legal obligations so far as other persons may be affected. It is heedless and palpable violation of legal duty respecting the rights of others." *Id.*

trate's conclusion that the Clinic's only evidence presented in opposition to Wang's motion, an affidavit from its expert, White, failed to create a genuine issue of material fact as to the gross negligence claim.[4]

Instead, the Clinic maintains that the magistrate unfairly dismissed White's affidavit as improperly lacking facts upon which to base an opinion and erred in opining on an ultimate issue in the form of a legal conclusion. The Clinic cites a number of cases such as *Peteet v. Dow Chemical Co.*, 868 F.2d 1428 (5th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989), and *Hermes v. Pfizer, Inc.*, 848 F.2d 66 (5th Cir.1988), to demonstrate that White's affidavit was not inadmissible and unqualified *per se* and was sufficient to create a material issue of fact.

We disagree with the Clinic and affirm the summary judgment on the gross negligence issue. While gross negligence would void the limitation of damages clause in the contract in either Louisiana, *see* La.Civ. Code Ann. art. 2004 (West 1987), or Massachusetts, *see Gillespie v. Papale*, 541 F.Supp. 1042, 1046 (D.Mass.1982) 4, we do not believe that the Clinic has adequately presented evidence to create a genuine issue of material fact as to the gross negligence claim. It has, however, sufficiently demonstrated that issues of material fact may exist regarding its ordinary negligence claim.

Although the Clinic adequately detailed the caselaw on the disqualification of proffered expert opinions, the magistrate found that White's affidavit fits each of these disqualification requirements. Indeed, White's affidavit is wholly or almost wholly conclusory and is not supported by sufficient facts. We thus agree with the magistrate and the court that the affidavit is insufficient to defeat Wang's summary judgment motion on the gross negligence issue.

We have recognized that there is a level of conclusoriness below which an affidavit must not sink if it is to provide the basis for a genuine issue of material fact. We have held that the district court may inquire into the reliability and foundation of

---

The Louisiana courts have also recognized the difference between gross negligence and ordinary negligence. In *Cates v. Beauregard Elec. Coop., Inc.*, 316 So.2d 907, 916 (La.App. 3d Cir. 1975), *aff'd*, 328 So.2d 367, *cert. denied*, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976), the court described the higher conduct required to prove gross negligence:

The terms 'willful', 'wanton', and 'reckless' have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to do [sic] the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.

4. White's affidavit provides in pertinent part as follows:

6. It is my expert opinion that Wang Laboratories was grossly negligent (as different from simple negligence) in its duties and that gross negligence was the cause of the loss of data....

It is never acceptable to subject the last copy of valuable data to even a properly working computer unless extreme precautions have been taken, unless there is no alternative to subjecting the data to such risk and only when there is a compelling need to use the data. None of those circumstances existed.

In addition and much worse, Wang subjected this only copy of this valuable data to a computer known by Wang to be malfunctioning.

Other related acts of negligence well below the standard of practice are:

a. Failure initially to make sufficient copies (at least two) of the first set of backup disks in the new format (and saving the old format set).

b. Failure to test and verify the reformat and backup process with valueless test data before subjecting valuable data to this process.

c. Subjecting any valuable data to loss while modifying and repairing the [Clinic's] computer.

d. Failure to make a print out of th[e] data before attempting a reformat or copy of the last copy.

any expert's opinion to determine its admissibility. *Washington v. Armstrong World Indus., Inc.*, 839 F.2d 1121, 1123–24 (5th Cir.1988). *Accord Slaughter v. Southern Talc Co.*, 919 F.2d 304, 306–07 (5th Cir. 1990) (rejection of expert's affidavit).

When the "source upon which an expert's opinion relies" is of little weight, we have held "that the jury should not be permitted to receive that opinion." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir.1987). *Accord Brown v. Parker–Hannifin Corp.*, 919 F.2d 308, 311–12 (5th Cir.1990) (exclusion of expert's testimony). Indeed, "unsupported ... affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir.1985) (citing C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure: Civil* 2d § 2738 (1983)). It seems that this principle should be especially applicable where, as here, the expert is opining on *gross* negligence, an issue more properly left to judges and juries. Moreover, White's affidavit offers no explanation of how he distinguishes between simple and gross negligence.

"Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible" *Viterbo*, 826 F.2d at 424. On this basis, the court properly granted Wang's summary judgment motion on the gross negligence issue. *See Haspel v. Rollins Protective Serv., Inc.*, 490 So.2d 530, 533 (La.App. 4th Cir. 1986) (affirming summary judgment on wilful or wanton negligence because contract's limitation of liability clause was clear and because insufficient evidence of negligence was presented).

### IV.

■ The Clinic raised *res ipsa loquitur* as a bar to Wang's motion for partial summary judgment on the gross negligence claim. The magistrate did not address this issue in his report, and the Clinic did not object to the report on this basis. Accordingly, Wang argues that the Clinic cannot now raise it, relying upon *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). We disagree; the Clinic is still able to request that the issue be considered on appeal, even if it did not question the magistrate's findings. *Thomas*, 474 U.S. at 148–49, 106 S.Ct. at 471–72.

■ However, *res ipsa loquitur* does not apply. The Clinic has not shown that Wang had exclusive control of the computer and the damaged disk at all times during which the data might have been lost. In fact, it is evident that Wang did not. Moreover, *res ipsa loquitur* would not establish the *gross* negligence necessary to avoid the contractual limitation of damages.

### V.

■ The Clinic next maintains that the court inappropriately granted summary judgment on its claims of unfair or deceptive trade practices. We disagree. Both the court and the magistrate correctly determined that the facts that the Clinic alleges concerning this issue simply "do not present a situation involving any unfair trade practice."

The Clinic alleged in its supplemental complaint that Wang's practice of "deliberately failing to notify customers of known defects in their computer constituted unfair and deceptive trade practices under the Louisiana [UTPA]...." In other words, Wang knew of the potential problems with the old EPROM model but waited until the Clinic's problems occurred to do anything about it. The Clinic filed three affidavits in opposition to summary judgment (i.e., Rea, Abernathy, and Abshire). The magistrate concluded that the affidavits were contradictory and conclusory and that there was no genuine issue of material fact as to deceptive trade practices.[5]

Wang argues that the Clinic is not protected by the UTPA because it is not a business competitor of Wang and because

---

5. Rea's and Abshire's affidavits appear to be attempts to bring gross negligence back into the case. Abernathy's affidavit at least addressed "latent defects" and customs "injurious to customers."

the purchase of the computer does not fall within the definition of a consumer transaction under the Act. We agree. "Consumer transaction means any transaction involving trade or commerce to a natural person, the subject of which transaction is primarily intended for personal, family or household use." La.Rev.Stat.Ann. § 51:-1402(3) (West 1987). Moreover, the Clinic did not allege a cognizable violation of the UTPA.[6]

## VI.

■ The Clinic further argues that the court inappropriately granted summary judgment on its claim for redhibition. "Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." La.Civ.Code Ann. art. 2520 (West 1987); *see LaFleur v. Boyce Mach. Corp.*, 294 So.2d 498, 499 (La.1974). We disagree with the Clinic's contentions and uphold the summary judgment.

The Clinic argues that Louisiana law should govern all its claims and that Massachusetts law governs only the construction or interpretation of the agreement. Wang contends that the parties chose Massachusetts law and that it governs all issues.

The contract states, "This Agreement shall be deemed to have been made in, and shall be construed pursuant to the laws of the commonwealth of Massachusetts." The Clinic argues that this merely provides that the contract is to be interpreted, not enforced or governed, under Massachusetts law and accordingly, that tort or other claims arising out of Wang's performance are not precluded by the contract.

We believe that Massachusetts substantive law should govern the negligence issues in this dispute. Since the contract provides for limited damages in the case of Wang's negligence, the contract's choice-of-law clause specifying Massachusetts law applies. Massachusetts law also applies to the gross negligence issue, since in order to make the determination between gross and ordinary negligence, we must use Massachusetts law on ordinary negligence as a starting point.

Thus, the discrepancies between that state's two standards should be what is relevant here, and not a comparison between Massachusetts's ordinary negligence law and the gross negligence law of Louisiana. But even accepting the Clinic's argument on this point, it still would not prevail.

■ The Clinic argues that it demonstrated a genuine issue of material fact as to whether the alleged defect in the old EPROM rose to the level of a redhibitory vice and whether that vice was the legal cause of the Clinic's damages. First, Wang contends that the Clinic made a permissible waiver under Louisiana law of any cause of action for redhibition by agreeing to the limited warranty. *See California Chem. Co. v. Lovett*, 204 So.2d 633, 636 (La.App. 3d Cir.1967). The agreement expressly excludes "warranties, express or implied, including without limitation any warranties of merchantability or fitness for a particular purpose." *See Datamatic, Inc. v. IBM Corp.*, 613 F.Supp. 715, 720 (W.D.La.1985), *aff'd*, 795 F.2d 458 (5th Cir. 1986) (similar manufacturer's limited warranty precluded a buyer's redhibitory action).

Second, the Clinic failed to establish an essential element of its case—that the old EPROM was defective. "A complete failure of proof on an essential element renders all other facts immaterial...." *Washington*, 839 F.2d at 1122. All that

6. *See Gautreau v. Southern Milk Sales, Inc.*, 509 So.2d 495, 497 (La.App. 3d Cir.1987) (The court found tortious conversion did not amount to an unfair trade practice and stated, "[a] trade practice is unfair when it offends public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."); *see also Coffey v. Peoples Mortgage & Loan, Inc.*, 408 So.2d 1153, 1156 (La.App. 2d Cir.1981) (declining to impose penalties under UTPA against finance company for charging usurious interest).

the Clinic proved was that a trade service bulletin notified Wang representatives that error codes might be solved by replacing the R7 Eprom with the upgraded R10 Eprom. Wang notes that four years had passed before the Clinic's problems surfaced and that those problems had nothing to do with the loss of data. Moreover, the R7 Eprom had been replaced when the data loss occurred.

The Clinic counters that the R7 Eprom "set in motion a series of events" resulting in the loss of its data. The Clinic's argument is tenuous, and we agree with Wang and the district court that summary judgment was appropriate. Putting it simply, redhibition smacks of merchantability, which the Clinic expressly waived.

## VII.

■ The Clinic further contends that the court erred in ruling that the individual physicians and their corporations lacked standing to sue Wang. Its argument is without merit.

The magistrate concluded that the individual physicians and their corporations lacked standing because the contract was between the Clinic and Wang, the doctors were not named in the contract and did not sign it, and the Clinic is a separate entity. Under Louisiana law, a partnership is an entity distinct from its partners and is the proper party to maintain an action for damage to the partnership property. La.Civ. Code art. 2801; *Dalby v. United States Fidelity & Guar. Co.,* 365 So.2d 568, 570 (La.App. 1st Cir.1978). The magistrate concluded that there is no indication that the contract was entered into on behalf of the individual members or the individual corporations, rather than the partnership. Nor is there any indication that the partnership will not protect the individual interests of the partners. And, under Fed.R. Civ.P. 17, the real party in interest is the Clinic, as the basis for the suit is the service agreement.

The Clinic frames the issue as whether the individual doctors, or their professional

corporations who suffer personal damage as a result of another's negligence, can sue under Louisiana law. We do not believe that there is a case for tort liability here. The doctors' complaints stem from the contract, the computer and data apparently are the Clinic's property, and the doctors are complaining about the same loss of data on which the Clinic's claims are based. In short, the individual doctors and their corporations allege no damage to property they own for which the Clinic could not recover.[7]

Finding no error, we AFFIRM the decision of the district court granting Wang's summary judgment motions.

ALVIN B. RUBIN, Circuit Judge, dissenting:

I respectfully dissent. I think that the affidavit of Thomas N. White, Jr. was not "conclusory" and unsupported by "specific facts", as the majority opinion labels it, but was sufficiently explicit to create a genuine dispute of material fact, for, if credited by the factfinder, it was sufficient to support a finding of gross negligence.

These are the facts and opinions based on fact recited by White:

> I have reviewed the circumstances concerning the loss of all computer business data on August 11, 1987, by Orthopedic and Sports Injury Clinic. In so reviewing I have examined the affidavits of Paul Wardel and Betty J. Ledbetter, the deposition transcripts of Gloria Doyle, Mark Bimle and Ed Martinez together with attached exhibits.
>
> \*    \*    \*    \*    \*    \*
>
> It is never acceptable to subject the last copy of valuable data to even a properly *working* computer unless extreme precautions have been taken, unless there is no alternative to subjecting the data to such risk and *only* when there is a compelling need to use the data.
>
> None of those circumstances existed.
>
> In addition and much worse, Wang subjected this only copy of this valuable

---

7. We also believe the physicians' claim for mental anguish is meritless.

data to a computer known by Wang to be malfunctioning.

Other related acts of negligence well below the standard of practice are:

a. Failure initially to make sufficient copies (at least two) of the first set of backup disks in the next format (and saving the old format set).

b. Failure to test and verify the reformat and backup process with valueless test data before subjecting valuable data to this process.

c. Subjecting any valuable data to loss while modifying and repairing the Orthopedic and Sports Injury Clinic computer.

d. Failure to make a print out of the data before attempting a reformat or copy of the last copy.

These statements appear to me to be explicit and, to the extent they state opinions, sufficiently based on recited facts. An opinion, which is admissible under Fed. Rule of Evidence 702, is necessarily a conclusion, but that is not sufficient to condemn it as "conclusory" else all opinion evidence would be inadmissible.

White's affidavit is, therefore, sufficient to create a genuine issue of material fact. Neither judges nor juries know or are expected to know what standards of care are required in repairing a computer under the circumstances described in the majority opinion. The question is not what would constitute gross negligence on the part of a layman, but what is gross negligence by a computer-servicing expert. We are dependent on the industry's standards of care to determine both whether there was a departure from the standard and, if so, how egregious that nonconformity was. White was well qualified to inform the factfinder of both. According to his affidavit he had this experience:

I am an electronics engineer, BSEE 1964, Southern Methodist University....

I first began working with computers and computer installations in 1963 and have continued doing so to date. I have had complete large computer systems under my control and authority. I wrote computer specifications for computer installations at the Manned Spaceflight Center in Houston. At one time I was responsible for a very large complete missile and satellite tracking operation in the United States space effort with about 80 engineers and technicians working for me, said operation included a centralized computer system. I continue to have exposure to standard procedures in the operations of computer systems....

I am also an attorney licensed to practice law in California with fifteen years experience. A large part of my practice is devoted to matters involving electronics and computer companies and their computer operations.

I would not substitute our judgment on whether the alleged negligence was "gross" for that of the factfinder who, after hearing the testimony, might conclude that Wardel's failures to comply with industry standards, explicitly described by White, were sufficient to justify affixing the pejorative description [1] to what the majority concedes was sufficient to constitute negligence if proved.

---

1. *Milwaukee & St. Paul Ry. v. Arms,* 91 U.S. 489, 494, 23 L.Ed. 374 (1875) ("gross negligence is ordinary negligence with a vituperative epithet").