# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CA-00023-SCT

*RHONDA MAYE AND HAROLD GOODWIN*

*v.*

*PEARL RIVER COUNTY, MISSISSIPPI AND DANIEL L. COLLIER*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/03/1997 |
| TRIAL JUDGE: | HON. MICHAEL RAY EUBANKS |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | REBECCA C. TAYLOR |
| ATTORNEYS FOR APPELLEES: | TOMMIE SULLIVAN CARDIN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND RENDERED IN PART, REVERSED AND REMANDED IN PART- 06/10/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/1/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Rhonda Maye and Harold Goodwin (Goodwin) filed a negligence action against Pearl River County and Deputy Sheriff Daniel L. Collier, alleging they were entitled to damages for injuries incurred when Collier, a Deputy Sheriff of Pearl River County, backed into a car driven by Barbara Goodwin on July 14, 1994. Maye and Goodwin filed suit on September 21, 1995, under the Mississippi Tort Claims Act. Trial was conducted on November 14, 1997. The Circuit Court entered its judgment for Pearl River County and Collier on December 3, 1997, finding it was bound by the doctrine of *stare decisis* to follow this Court's original holding in ***Turner v. City of Ruleville***, No. 95-CA-00880-SCT, 1997 WL 5612151 (Miss. Sept. 11, 1997). Maye and Goodwin filed this appeal on December 22, 1997, assigning one issue.

**I. WHETHER THE LOWER COURT ERRED IN FINDING THE MISSISSIPPI TORT CLAIMS ACT REQUIRES A SPECIFIC INTENT TO HARM TO REMOVE AN ACT**

**FROM IMMUNITY, WHERE, AS HERE, THE SHERIFF'S DEPUTY BACKED INTO THE VEHICLE OWNED BY HAROLD GOODWIN IN WHICH RHONDA MAYE WAS A PASSENGER, CAUSING INJURY TO MS. MAYE AND TO THE VEHICLE WHILE FOLLOWING THIS COURT'S DECISION IN *TURNER V. CITY OF RULEVILLE*, NO. 95-CA-00880-SCT, 1997 WL 562151 (MISS. SEPT. 11, 1997) (MOTION FOR REHEARING PENDING).**

## STATEMENT OF THE FACTS

¶2. This case arises out of a two-car accident involving a deputy sheriff employed by Pearl River County and a private citizen. The facts are substantially uncontested. On July 14, 1994, Deputy Daniel L. Collier was backing out of a driveway at the Pearl River County jail in Poplarville when he backed into a car driven by Barbara Goodwin (Barbara). Collier was acting in his official duty at the time of the accident by transporting two prisoners to the courthouse in a sheriff's vehicle.

¶3. After checking all his rear view mirrors, Collier backed the car from the parking space straight up the incline to the entrance of the parking lot. Even though Collier checked his mirrors, he testified he could not see the road from the parking lot because the jail and the lot sit below the level of the road. Collier was attempting to back up the incline far enough into the entrance to make a left hand turn through the parking lot and then exit the parking lot through another entrance onto Oak Hill Road.

¶4. Barbara pulled into the parking lot and saw Collier backing toward her. She stopped and left her foot on the brake. As she stopped, Barbara placed her thumbs on her horn and kept them there. The back of Barbara's car was clear of the street, but she had nowhere to go. Her car was stopped on an incline facing downward with a street behind her and the sheriff's car backing toward her.

¶5. After backing his car into Barbara's car, Collier rolled forward a little, put the car into park, and immediately got out to see if everyone was okay. He then went into the dispatch office to request an officer.

¶6. Barbara testified after Collier went inside to get somebody to investigate, he returned, put his arm around her shoulder and said, "Barbara, I am so sorry. I didn't even see you. I'm so use to backing up." Collier only recalled telling her he did not see her.

¶7. Barbara Goodwin was driving Harold Goodwin's car at the time of the accident. Rhonda Maye, the daughter of Harold and Barbara Goodwin, was a passenger in the front seat of Goodwin's car. Melanie Goodwin, another daughter of Harold and Barbara Goodwin, and Melanie's son Hunter were in the back seat. Goodwin was not in the car.

¶8. As a result of the impact, Goodwin's car sustained damages to the left front fender and driver's door totaling over $1900.00. The sheriff's vehicle sustained damages to the right rear fender.

¶9. Rhonda Maye testified she hit the dash board at the time of the accident injuring her right knee. Maye further testified her neck and back were hurting the next day, prompting her to visit the emergency room at the hospital in Poplarville. X-rays were taken at the hospital and she was referred to Dr. David M. Jarrott in New Orleans, but she was never hospitalized.

¶10. Dr. Jarrott released Maye in September of 1994, around two months after the accident. At that time, she could perform normal household tasks. Maye testified she was out of work for approximately ten

months because Dr. Jarrott restricted her to only light duty work, which was unavailable at her place of employment, Pearl River County Nursing Home. She didn't work again until May of 1995, when she began working at Crosby Memorial Hospital. As a result, she lost approximately $8,000.00 in wages.

¶11. It is undisputed that Collier did not intentionally run into the other vehicle.

¶12. The trial court issued its decision December 3, 1997. The court found for the defendants, Pearl River County and Collier, based on the intent requirement in our original decision in *Turner*. The court held the plaintiffs failed to make the necessary showing Collier intended to hit Goodwin's car when he backed out of the parking lot. Expressing deep disagreement with our original decision in *Turner* requiring a showing of intent, the trial court nevertheless stated it had no choice but to find for the defendants. Goodwin and Maye timely appealed.

## DISCUSSION OF LAW

**I. WHETHER THE LOWER COURT ERRED IN FINDING THE MISSISSIPPI TORT CLAIMS ACT REQUIRES A SPECIFIC INTENT TO HARM TO REMOVE AN ACT FROM IMMUNITY, WHERE, AS HERE, THE SHERIFF'S DEPUTY BACKED INTO THE VEHICLE OWNED BY HAROLD GOODWIN IN WHICH RHONDA MAYE WAS A PASSENGER, CAUSING INJURY TO MS. MAYE AND TO THE VEHICLE WHILE FOLLOWING THIS COURT'S DECISION IN *TURNER V. CITY OF RULEVILLE*, NO. 95-CA-00880-SCT, 1997 WL 562151 (MISS. SEPT. 11, 1997) (MOTION FOR REHEARING PENDING).**

¶13. Recently we reconsidered our original decision in *Turner v. City of Ruleville* and upon motion for rehearing issued a new opinion, *Turner v. City of Ruleville*, No. 95-CA-00880-SCT (Miss. Mar. 25, 1999).

¶14. The County and Collier base their claims of immunity on § 11-46-9(1)(c) of the Mississippi Tort Claims Act. Section 11-46-9(1)(c) provides immunity for governmental entities and their employees for any claim

> [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

Miss. Code Ann. § 11-46-9(1)(c) (Supp. 1998).

¶15. Because the new *Turner* decision does not require a showing of intent to harm to remove an act from immunity, the only question left to be considered is whether Collier's actions meet the Act's requirement of acting "in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury."

¶16. In *Turner*, we discussed the meaning of reckless disregard.

> "Disregard" of the safety of others is at least negligence if not gross negligence. Because "reckless" precedes "disregard," the standard is elevated. As quoted above from *Black's Law Dictionary*

"reckless," according to the circumstances, "may mean desperately heedless, wanton or willful, *or* it may mean only careless, inattentive or negligence." In the context of the statute, reckless must connote "wanton or willful," because immunity lies for negligence. And this Court has held that "wanton" and "reckless disregard" are just a step below specific intent. . . .

Our case law indicates "reckless disregard" embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act. Based on the facts pled, there is no allegation that the officer intentionally meant to harm Turner. However, the facts pled do allege that he wrongfully and intentionally allowed a visibly intoxicated Smith to continue driving. By this alleged act, the officer allegedly showed a reckless or wanton or willful disregard for the safety of other drivers on the road, including Turner.

*Turner*, 95-CA-00880-SCT (¶¶18-19) (citations omitted).

¶17. In *Turner*, the question was whether the officer acted with reckless disregard for the safety of others when he allowed an intoxicated motorist to continue driving. This intoxicated motorist later collided with Turner causing her injuries. In the case *sub judice*, the question is whether Collier evidenced a reckless disregard for the rights and safety of others when he backed the sheriff's car up an incline without being able to see incoming traffic.

¶18. The County and Collier argue Maye and Goodwin produced no evidence Collier acted with reckless disregard. In doing so the County and Collier attempt to equate Collier's actions with simply backing out of a parking space. Collier's actions are, however, a bit different. Evidence presented at trial showed Collier backed his car up an incline, blocking traffic turning into the parking lot from the road at the top of the incline. Although Collier testified that he checked his mirrors before backing up, he also stated he could not see approaching traffic just by using his mirrors. Barbara testified she pulled into the lot, saw Collier backing up and stopped her car. According to Barbara, at this point Collier was forty feet away. As soon as she pulled into the lot entrance, she blew her horn and continued to blow it until she was hit. In short, without being able to see, Collier backed up and blocked an entrance and did not respond to Barbara's horn, even though he was forty feet away when she started blowing the horn. The collision produced $1,900 in damages to Goodwin's car. These actions are not the same as just backing out of a parking space as Collier suggests in his brief.

¶19. The County and Collier cite a Fifth Circuit case, *Orthopedic & Sports Injury Clinic v. Wang Laboratories, Inc.*, 922 F.2d 220 (5th Cir. 1991), that addresses the element of culpability inherent in the term reckless disregard. The Fifth Circuit wrote

The terms 'willful', 'wanton', and 'reckless' have been applied to that degree of fault which lies between intent to do wrong, and the mere reasonable risk of harm involved in ordinary negligence. *These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended.* The usual meaning assigned to do [sic] the terms is that the actor has intentionally done an *act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow.* It usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.

*Orthopedic & Sports Injury Clinic*, 922 F.2d at 224 n.3 (emphasis added) (quoting *Cates v. Beauregard Elec. Coop., Inc.*, 316 So. 2d 907, 916 (La. Ct. App. 1975)).

¶20. The County and Collier assert Collier's conduct does not rise to the level of that contemplated in *Orthopedic & Sports Injury Clinic*. They argue Collier's conduct was simple negligence because Maye and Goodwin did not prove Collier's conduct showed a conscious indifference to the consequences of his actions.

¶21. However, Collier did not just carelessly back out of a space. With conscious indifference to the consequences, he backed out knowing he could not see what was behind him. This Court has held "'wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care.'" *Turner*, 95-CA-00880-SCT (¶16) (citing *Beta Beta Chapter of Beta Theta Pi v. May*, 611 So. 2d 889, 895 (Miss. 1992) (quoting *Covington v. Carley*, 197 Miss. 535, 541-42; 19 So. 817, 818 (1944))) .

¶22. When Collier backed out of the parking space and up the incline, he did not know what was behind him. He knew he could not see cars coming into the lot and he knew checking his mirrors would not let him see cars pulling into the lot. It is obvious from the damage to Goodwin's car and the injuries to Maye, that Collier was going much too fast to be backing up the entrance to the parking lot when he could not see what was behind him. These actions rise above simple negligence to the level of reckless disregard of the safety and well-being of others. For this reason the County and Collier are not immune from suit under the Act. For this reason, we reverse the decision of the trial court and render a decision finding the County and Collier liable for Maye's and Goodwin's injuries.

¶23. Maye and Goodwin introduced evidence of damages caused by the accident. However, in its decision, the trial court did not make any findings regarding damages. For this limited purpose we remand for a determination of damages.

## CONCLUSION

¶24. Our original decision in *Turner v. City of Ruleville*, No. 95-CA-00880-SCT, 1997 WL 562151 (Miss. Sept. 11, 1997), has been withdrawn and replaced with *Turner v. City of Ruleville*, No. 95-CA-00880-SCT (Miss. Mar. 25, 1999). This decision does not require a showing of specific intent to harm. The plaintiffs are not required to show Collier intended to hit Goodwin's car when Collier backed out of the parking lot. Although Collier did not intend to hit Goodwin's car, his actions do rise to the level of reckless disregard because Collier showed a conscious disregard for the safety of others when he backed up the incline entrance to the parking lot knowing he could not be sure the area was clear. This case is therefore reversed and rendered as to liability and remanded for a determination of damages.

¶25. **REVERSED AND RENDERED IN PART AND REVERSED AND REMANDED IN PART.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS AND McRAE, JJ., CONCUR. MILLS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J., AND SMITH, J. COBB, J., NOT PARTICIPATING.**

**MILLS, JUSTICE, DISSENTING:**

¶26. I do not believe the actions of Deputy Sheriff Collier in this case constitute reckless disregard. Therefore, I must respectfully dissent. As the majority accurately notes:

> "Disregard" of the safety of others is at least negligence if not gross negligence. Because "reckless" precedes "disregard," the standard is elevated. As quoted above from ***Black's Law Dictionary*** "reckless," according to the circumstances, "may mean desperately heedless, wanton or willful ***or*** it may mean only careless, inattentive or negligence." In the context of the statute, reckless must connote "wanton or willful," because immunity lies for negligence. And this Court has held that "wanton" and "reckless disregard" are just a step below specific intent . . . .

*Turner v. City of Ruleville*, No. 95-CA-00880-SCT, Slip Op. At 7 (Miss. Mar. 25, 1999) (citations omitted). The majority also notes we have held, "'wantonness is a failure or refusal to exercise any care, while negligence is a failure to exercise due care'." *Id.* (*quoting* **Beta Beta Chapter of Beta Theta Pi v. May**, 611 So. 2d 889, 895 (Miss. 1992)).

¶27. While it is true that Collier could not see well and backed up the entrance to the parking lot, I do not find that this was refusal to exercise any care. Collier should have stepped out of the car or chosen not to attempt this maneuver at all. However, his actions constitute common simple negligence. They do not rise to the level of reckless disregard.

**PRATHER, C.J., AND SMITH, J., JOIN THIS OPINION.**